PLEASE CONFORM

1  TUCKER ELLIS & WEST LLP
   MOLLIE BENEDICT SBN 187084
2  mollie.benedict@tuckerellis.com
   SU-LYN COMBS SBN 209834
3  su-lyn.combs@tuckerellis.com
   WILLIAM H. DANCE SBN 230041
4  william.dance@tuckerellis.com
   515 South Flower Street
5  Forty-Second Floor
   Los Angeles, CA 90071-2223
6  Telephone: 213.430.3400
   Facsimile: 213.430.3409
7
   Attorneys for Defendant
8  JOHNSON & JOHNSON

9            UNITED STATES DISTRICT COURT

10          CENTRAL DISTRICT OF CALIFORNIA

11                WESTERN DIVISION

12

13  PETER ROBERTSON AND KINDRA      )  CASE NO. CV11-09050 JAK (SSx)
    ROBERTSON,                      )
14                                  )
         Plaintiffs,                )  NOTICE OF REMOVAL OF ACTION
15                                  )  UNDER 28 U.S.C. § 1441(B)
    v.                              )  (DIVERSITY)
16  MCNEIL-PPC, INC. AND            )
17  JOHNSON AND JOHNSON, DOES 1-50  )
                                    )
18       Defendants.               )
                                    )
19                                  )

20

21  TO THE CLERK OF THE COURT:

22       Defendant Johnson & Johnson ("J&J" or "Defendant") submits this Notice of

23  Removal of *Peter Robertson and Kindra Robertson v. Johnson & Johnson, McNEIL-*

24  *PPC, Inc., and Does 1-50*, filed in the Superior Court of the State of California, County of

25  Los Angeles, Case No. BC466891, on the ground that this Court has original jurisdiction

26  under 28 U.S.C. §§ 1332 and 1441, et. seq.  Diversity of citizenship exists between the

27  parties, and it is facially evident from the Complaint that the amount in controversy

28  exceeds $75,000.00, exclusive of interest and costs.  Accordingly, pursuant to 28 U.S.C.

TUCKER ELLIS & WEST LLP
Cleveland ◆ Columbus ◆ Denver ◆ Los Angeles ◆ San Francisco

§§ 1441 and 1446, Defendant J&J hereby gives notice of removal of this action from the Superior Court for the State of California, County of Los Angeles, to this Court. As grounds for removal, J&J states as follows:

1.     Los Angeles County, California is located within the Western Division of the Central District of California and, under 28 U.S.C. § 1441(a), venue for this action is proper in this Court because the Western Division of the Central District of California is the "district and division embracing the place where the state action is pending."

2.     On August 5, 2011, Peter Robertson and Kindra Robertson, In Pro Per, ("Plaintiffs") filed a Complaint in the Superior Court of California, County of Los Angeles. Compl., Ex. A.

3.     Service was made on J&J on October 3, 2011. Decl. of Su-Lyn Combs in Support of Notice of Removal of Action ("Combs Decl.") ¶ 4. J&J filed an Answer to Plaintiffs' Complaint on October 31, 2011. Answer, Ex. B; Combs Decl. ¶ 6.

4.     Defendant McNEIL-PPC, Inc. has not been served in this action but consents to this removal. Combs Decl. ¶ 5.

5.     Plaintiffs' Complaint, which purports to state a wrongful death action, asserts claims under theories of products liability, strict liability, negligence, breach of express warranty, and breach of implied warranty based on Plaintiffs' decedent's use of Tylenol®. *See generally* Compl., Ex. A.

6.     Plaintiffs assert that they are residents of the State of California. Compl. at p. 1, Ex. A. Plaintiffs do not allege any alternative state of residence. Based on publicly available information and public records through 2011, Plaintiffs have resided in California since as early as 2001. Combs Decl. ¶ 6. Based on these facts, Plaintiffs' state of domicile is California. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (for the diversity jurisdiction statute, "[t]he natural person's state citizenship is… determined by her state of domicile," which is defined as "her permanent home, where she resides with the intention to remain or to which she intends to return"). Accordingly, upon information and belief, California is the state of which Plaintiffs are

TUCKER ELLIS & WEST LLP
Cleveland ◆ Columbus ◆ Denver ◆ Los Angeles ◆ San Francisco

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (DIVERSITY)**
012180.003506 739686.1

1  citizens for purposes of determining diversity.

2      7.     As further detailed below, each Defendant to this action was a citizen of a

3  state other than California at the time of filing of the instant lawsuit. Pursuant to 28

4  U.S.C. §§ 1332 and 1441(b), complete diversity of citizenship exists and removal of this

5  suit is proper.

6      8.     J&J is now, and was at the time the complaint was filed, a New Jersey

7  corporation with its principal place of business in New Brunswick, New Jersey.

8  Accordingly, J&J is a citizen of the State of New Jersey.[1]   Combs Decl. ¶ 9; *see* 28

9  U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which

10  it has been incorporated and of the State where it has its principal place of business").

11     9.     McNEIL-PPC, Inc. is now, and was at the time the complaint was filed, a

12  New Jersey corporation with its principal place of business in Skillman, New Jersey.

13  Combs Decl. ¶ 10.  Accordingly, McNeil is a citizen of the State of New Jersey.[2]  *See* 28

14  U.S.C. § 1332(c)(1).

15     10.    Although Plaintiffs have sued unknown Defendants, Does 1 through 50, the

16  citizenship or residence of defendants sued under fictitious names is disregarded.  28

17  U.S.C. § 1441(a) ("[f]or purposes of removal under this chapter, the citizenship of

18  defendants sued under fictitious names shall be disregarded").

19     11.    Therefore, at all relevant times, Defendants to this action are citizens of a

20

21  1 *See* Johnson & Johnson's February 2011 Securities and Exchange Commission Form
22  10-K ("J&J 10-K"), at *1 (listing New Jersey as the state of incorporation and New
    Jersey as the location of the company's principal executive offices), *available at*
23  http://www.sec.gov/Archives/edgar/data/200406/000095012311018128/y86310ke10vk.ht
24  m (last visited Nov. 1, 2011).

25  2 *See* J&J 10-K, at Exhibit 21 (listing New Jersey as the jurisdiction of organization for
26  McNEIL-PPC, Inc., a wholly-owned subsidiary of Johnson & Johnson), *available at*
27  *http://www.sec.gov/Archives/edgar/data/200406/000095012311018128/y86310kexv21.ht*
    *m* (last visited Nov. 1, 2011).
28

TUCKER ELLIS & WEST LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (DIVERSITY)**
012180.003506 739686.1

1  state other than California and complete diversity exists and removal of this suit is

2  proper. *See* 28 U.S.C. § 1332 and 28 U.S.C. § 1441(b).

3     12.    Regarding the requisite amount in controversy, it is facially evident from the

4  Complaint that the amount in controversy exceeds $75,000.00. *See Singer v. State Farm*

5  *Mut. Auto. Ins*. Co., 116 F.3d 373 (9th Cir. 1997). A removing defendant need only show

6  that the amount in controversy "more likely than not" exceeds the jurisdictional minimum

7  of $75,000. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

8  Plaintiffs allege negligence, strict product liability and wrongful death and seek to

9  recover for "compensatory damages" and "punitive damages" resulting from the death of

10 their son Tyler Robertson. Compl. at p. 3. Although Defendant denies any liability to

11 Plaintiffs, their allegations plainly place more than $75,000 in controversy. *See*

12 *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1107-08 (9th Cir. 2010)

13 ("even though the state court complaint does not specify an amount" it satisfied amount

14 in controversy requirement by requesting damages for, among other things, wrongful

15 death, loss of consortium, negligence and funeral, medical and burial expenses); *see also*

16 *Campbell v. Bridgestone/Firestone, Inc.*, 2006 WL 707291, at *2 (E.D. Cal. Mar. 17,

17 2006) (apparent from complaint that amount in controversy met where plaintiffs asserted

18 strict products liability, negligence, and breach of warranty claims against multiple

19 defendants and complaint sought compensatory damages for wage loss, hospital and

20 medical expenses, general damages, and loss of earning capacity).

21     13.    Moreover, "[i]t is well established that punitive damages are part of the

22 amount in controversy in a civil action." *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945

23 (9th Cir. 2001). "To establish probable punitive damages, [a] defendant may introduce

24 evidence of jury verdicts in cases involving analogous facts." *Simmons v. PCR Tech.*,

25 209 F.Supp.2d at 1033 ("Although the facts of the instant action are far less egregious,

26 defendant has met its burden of showing by a preponderance of the evidence that the

27 amount in controversy should include a punitive damages award."); *Molnar v. 1-800-*

28 *Flowers.com, Inc.*, No. CV 08-0542, 2009 WL 481618, at *6 (C.D. Cal. Feb. 23, 2009)

TUCKER ELLIS & WEST LLP
Cleveland • Columbus • Denver • Los Angeles • San Francisco

4

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (DIVERSITY)**

("[I]n determining the amount in controversy, the Court may consider arguments set forth by defendant that punitive damages awards in other, similar, cases have been comparable to or higher than those claimed by [plaintiff]."). Here, California juries in other cases brought by plaintiffs alleging similar causes of action and seeking to recover similar damages have resulted in verdicts in excess of $75,000.00, exclusive of interest and costs. Combs Decl. ¶ 11. *See, e.g., Stewart v. Union Carbide Corp.*, 190 Cal.App.4th 23 (2010), Ex. C; *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116 (9th Cir. 1994), Ex. D. Therefore, the injuries alleged in the Complaint and the extensive and varied damages sought by Plaintiffs exceed $75,000.00.  Hence, the amount in controversy requirement of 28 U.S.C. § 1332(a) is satisfied.

14.     Removal is timely under 28 U.S.C. § 1446(b) as this Removal is filed within thirty (30) days of service on Defendant J&J, who was served on October 3, 2011. Combs Decl. ¶ 4.

15.     Immediately following the filing of this Notice of Removal, written notice of the filing of this Notice will be delivered to Plaintiffs.

16.     Defendant will promptly file a copy of this Notice with the Clerk of the Superior County of California, County of Los Angeles, as required by 28 U.S.C. § 1446(d).

17.     By removing this action to this Court, Defendant does not waive any defenses, objections or motions available to them under state or federal law.  Defendant expressly reserves the right to move for dismissal of Plaintiffs' Claims pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (DIVERSITY)**
012180.003506 739686.1

1    WHEREFORE, Defendant Johnson & Johnson removes this action from the

2  Superior Court of the State of California for the County of Los Angeles to the United

3  States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1332

4  and 1441.

5

6  DATED:  November 1, 2011                TUCKER ELLIS & WEST LLP

7

8

9                                              By: _____

10                                                Su-Lyn Combs, Esq.
                                                 Attorneys for Defendant
11                                               JOHNSON & JOHNSON

012180.003506 739686.1

TUCKER ELLIS & WEST LLP
Cleveland ♦ Columbus ♦ Denver♦ Los Angeles ♦ San Francisco

EXHIBIT A

2136281908
001/03/2011/MON 10:04 AM                    FAX NO.                    10:17:03 a.m.    10-03-2011    2/3
                                                                                          P. 002

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
McNeil-PPC, Inc., Johnson & Johnson   Does 1 to 50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Peter Robertson & Kindra Robertson

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

OCT 3 2011

John A. Clarke, Executive Officer/Clerk
BY _____ Deputy

OCT - 3 2011

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Los Angeles Superior Court-Stanley Mosk Courthouse<br>111 N. Hill Street<br>Los Angeles, CA 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>BC466891 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Peter Robertson & Kindra Robertson  760- 951- 5618
12955 Autumn Leaves
Victorville, California 92396

DATE:                                JOHN A. CLARKE, CLERK                          , Deputy
*(Fecha)*                            Clerk, by          Mary Flores                 *(Adjunto)*
                                     *(Secretario)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [✗] on behalf of *(specify):*  Johnson & Johnson
   under: [ ] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | American LegalNet, Inc.<br>www.FormsWorkflow.com | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|---|

ORIGINAL

PLD-PI-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Peter Robertson & Kindra Robertson  In Pro Per<br>12955 Autumn Leaves<br>Victorville, California<br>92395<br>TELEPHONE NO: 760-951-5618        FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): Pro Per | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES<br><br>AUG 05 2011<br><br>John A. Clarke, Executive Officer/Clerk<br>By _____, Deputy<br>I. Quincy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk

PLAINTIFF: Peter Robertson & Kindra Robertson

DEFENDANT: McNeil-PPC, Inc., Johnson & Johnson

☒ DOES 1 TO 50

| COMPLAINT—Personal Injury, Property Damage, Wrongful Death<br>☐ AMENDED (Number): | CASE NUMBER:<br><br>BC466891 |
|---|---|

Type (check all that apply):
☐ MOTOR VEHICLE   ☐ OTHER (specify):
  ☐ Property Damage   ☒ Wrongful Death
  ☐ Personal Injury   ☐ Other Damages (specify):

Jurisdiction (check all that apply):
☐ ACTION IS A LIMITED CIVIL CASE
  Amount demanded   ☐ does not exceed $10,000
                    ☐ exceeds $10,000, but does not exceed $25,000
☒ ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
☐ ACTION IS RECLASSIFIED by this amended complaint
  ☐ from limited to unlimited
  ☐ from unlimited to limited

1. Plaintiff (name or names): Peter Robertson & Kindra Robertson
   alleges causes of action against defendant (name or names): McNeil-PPC Inc. and Johnson & Johnson

2. This pleading, including attachments and exhibits, consists of the following number of pages: 4

3. Each plaintiff named above is a competent adult
   a. ☐ except plaintiff (name):
      (1) ☐ a corporation qualified to do business in California
      (2) ☐ an unincorporated entity (describe):
      (3) ☐ a public entity (describe):
      (4) ☐ a minor   ☐ an adult
          (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
          (b) ☐ other (specify):
      (5) ☐ other (specify):
   b. ☐ except plaintiff (name):
      (1) ☐ a corporation qualified to do business in California
      (2) ☐ an unincorporated entity (describe):
      (3) ☐ a public entity (describe):
      (4) ☐ a minor   ☐ an adult
          (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
          (b) ☐ other (specify):
      (5) ☐ other (specify):

☐ Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

| Form Approved for Optional Use<br>Judicial Council of California<br>PLD-PI-001 [Rev. January 1, 2007] | COMPLAINT—Personal Injury, Property<br>Damage, Wrongful Death | Page 1 of 3<br>Code of Civil Procedure, § 425.12<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |
|---|---|---|

PLD-PI-001

| SHORT TITLE: Robertson et al v. McNeil, et al. | CASE NUMBER: |
|---|---|

4. ☐ Plaintiff (name):

is doing business under the fictitious name (specify):

and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person

a. ☒ except defendant (name): McNeil-PPC Inc.
   (1) ☐ a business organization, form unknown
   (2) ☒ a corporation
   (3) ☐ an unincorporated entity (describe):

   (4) ☐ a public entity (describe):

   (5) ☐ other (specify):

c. ☐ except defendant (name):
   (1) ☐ a business organization, form unknown
   (2) ☐ a corporation
   (3) ☐ an unincorporated entity (describe):

   (4) ☐ a public entity (describe):

   (5) ☐ other (specify):

b. ☒ except defendant (name): Johnson & Johnson
   (1) ☐ a business organization, form unknown
   (2) ☒ a corporation
   (3) ☐ an unincorporated entity (describe):

   (4) ☐ a public entity (describe):

   (5) ☐ other (specify):

d. ☐ except defendant (name):
   (1) ☐ a business organization, form unknown
   (2) ☐ a corporation
   (3) ☐ an unincorporated entity (describe):

   (4) ☐ a public entity (describe):

   (5) ☐ other (specify):

☐ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.
   a. ☒ Doe defendants (specify Doe numbers): 1-25 _____ were the agents or employees of other named defendants and acted within the scope of that agency or employment.
   b. ☒ Doe defendants (specify Doe numbers): 26-50 _____ are persons whose capacities are unknown to plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are (names):

8. This court is the proper court because
   a. ☐ at least one defendant now resides in its jurisdictional area.
   b. ☐ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
   c. ☒ injury to person or damage to personal property occurred in its jurisdictional area.
   d. ☐ other (specify):

9. ☐ Plaintiff is required to comply with a claims statute, and
   a. ☐ has complied with applicable claims statutes, or
   b. ☐ is excused from complying because (specify):

PLD-PI-001 (Rev. January 1, 2007)

COMPLAINT—Personal Injury, Property Damage, Wrongful Death

Page 2 of 3

American LegalNet, Inc.
www.FormsWorkflow.com

PLD-PI-001

| SHORT TITLE: Robertson v. McNeil, et al. | CASE NUMBER: |
|---|---|

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached)*:
   a. ☐ Motor Vehicle
   b. ☐ General Negligence
   c. ☐ Intentional Tort
   d. ☒ Products Liability
   e. ☐ Premises Liability
   f. ☒ Other *(specify):* Wrongful Death

11. Plaintiff has suffered
   a. ☐ wage loss
   b. ☐ loss of use of property
   c. ☐ hospital and medical expenses
   d. ☐ general damage
   e. ☐ property damage
   f. ☐ loss of earning capacity
   g. ☒ other damage *(specify):* Wrongful Death of child

12. ☒ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   a. ☐ listed in Attachment 12.
   b. ☒ as follows: Mother and Father of Tyler Robertson claim general, special and punitive damages for wrongful death of son Tyler Robertson

13. The relief sought in this complaint is within the jurisdiction of this court.

14. Plaintiff prays for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. (1) ☒ compensatory damages
     (2) ☒ punitive damages
   The amount of damages is *(in cases for personal injury or wrongful death, you must check (1)):*
     (1) ☒ according to proof
     (2) ☐ in the amount of: $

15. ☐ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers):*

Date: 8/5/11

Peter Robertson
(TYPE OR PRINT NAME)

▶ *(signature)*
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

PLD-PI-001 [Rev. January 1, 2007]
COMPLAINT—Personal Injury, Property Damage, Wrongful Death
Page 3 of 3

American LegalNet, Inc.
www.FormsWorkflow.com

PLD-PI-001(5)

| SHORT TITLE:<br>Robertson v. McNeil, et al | CASE NUMBER: |
|---|---|

First_____   **CAUSE OF ACTION—Products Liability**   Page 4__
(number)

ATTACHMENT TO   ☒   Complaint   ☐   Cross - Complaint
*(Use a separate cause of action form for each cause of action.)*

Plaintiff *(name):* Peter Robertson & Kindra Robertson

Prod. L-1. On or about *(date):* 8/7/09                                                   plaintiff was injured by the following product:
Tylenol

Prod. L-2. Each of the defendants knew the product would be purchased and used without inspection for defects.
   The product was defective when it left the control of each defendant. The product at the time of injury
   was being
   ☒   used in the manner intended by the defendants,
   ☒   used in the manner that was reasonable foreseeable by defendants as involving a substantial danger not
         readily apparent. Adequate warnings of the danger were not given.

Prod. L-3. Plaintiff was a
   ☒   purchaser of the product,                              ☒   user of the product.
   ☐   bystander to the use of the product,               ☐   other *(specify):*

PLAINTIFF'S INJURY WAS THE LEGAL (PROXIMATE) RESULT OF THE FOLLOWING:
Prod. L-4.   ☒   **Count One—Strict liability** of the following defendants who
            a.   ☒   manufactured or assembled the product *(names):* McNeil-PPC Inc. and Johnson & Johnson

                      ☒   Does 1_____ to 25_____
            b.   ☒   designed and manufactured component parts supplied to the manufacturer *(names):*
                      McNeil-PPC Inc. and Johnson & Johnson

                      ☐   Does _____ to _____
            c.   ☒   sold the product to the public *(names):* McNeil-PPC Inc. and Johnson & Johnsonl

                      ☒   Does 1_____ to 25_____
Prod. L-5.   ☒   **Count Two—Negligence** of the following defendants who owed a duty to plaintiff *(names):*
            McNeil-PPC Inc. and Johnson & Johnson

                      ☒   Does 1_____ to 25_____
Prod. L-6.   ☒   **Count Three—Breach of warranty** by the following defendants *(names):*
            McNeil-PPC Inc. and Johnson & Johnson

                      ☒   Does 1_____ to 25_____
            a.   ☒   who breached an implied warranty
            b.   ☒   who breached an express warranty which was
                      ☒   written   ☐   oral.
Prod. L-7.   ☒   The defendants who are liable to plaintiffs for other reasons and the reasons for the liability are
                 ☐   listed in Attachment-Prod. L-7   ☒ as follows: manfuacturing defect when the product left the
                                                        manufacturer; design defect for failure to meet consumer
                                                        expectation; failure to adequately warn.

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(5) [Rev. January 1, 2007]

**CAUSE OF ACTION—Products Liability**

Page 1 of 1
Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

| SHORT TITLE: Roberson  V. MCNeil | CASE NUMBER BC466891 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☒ YES   CLASS ACTION? ☐ YES  LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL _____ ☐ HOURS/ ☐ DAYS

**Item II. Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):**

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check one Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> ### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons –<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☒ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

| SHORT TITLE: | CASE NUMBER |
|---|---|
| | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice<br>☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case<br>☐ A6109  Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| **Contract** | Breach of Contract/ Warranty<br>(06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019  Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff<br>☐ A6012  Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud<br>☐ A6031  Tortious Interference<br>☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse<br>Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation     Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure<br>☐ A6032  Quiet Title<br>☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-<br>Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4

| SHORT TITLE: | | CASE NUMBER |
|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 6. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

| SHORT TITLE | CASE NUMBER |
|---|---|
|  |  |

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☐1. ☐2. ☐3. ☒4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>*111. NORTH HILL STREET*<br>*LOS ANGELES - CA*<br>*90012* |
|---|---|
| CITY:<br>*LOS ANGELES* | STATE:<br>*CA* | ZIP CODE:<br>*90012* |  |

Item IV. *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the *STANLEY MOSK* courthouse in the *LOS ANGELES* District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: *08/05/2011*

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association
Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | | STATE BAR NUMBER | | Reserved for Clerk's File Stamp |
|---|---|---|---|---|
| TELEPHONE NO.: | FAX NO. (Optional): | | | |
| E-MAIL ADDRESS (Optional): | | | | |
| ATTORNEY FOR (Name): | | | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lasuperiorcourt.org** under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
    (INSERT DATE)                                            (INSERT DATE)
    complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case.  The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                            (ATTORNEY FOR PLAINTIFF)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                            (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                            (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                            (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                            (ATTORNEY FOR _____)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                            (ATTORNEY FOR _____)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                            (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

LACIV 036 (new)
LASC Approved 04/11

| SHORT TITLE | CASE NUMBER: |
|---|---|
|  |  |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

    It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____                    ➤  _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR PLAINTIFF)

Date:

_____                    ➤  _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR DEFENDANT)

Date:

_____                    ➤  _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR DEFENDANT)

Date:

_____                    ➤  _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR DEFENDANT)

Date:

_____                    ➤  _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR _____)

Date:

_____                    ➤  _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR _____)

Date:

_____                    ➤  _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

---

LACIV 075 (new)
LASC Approved 04/11       **STIPULATION AND ORDER – MOTIONS IN LIMINE**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤  (ATTORNEY FOR _____ )
(TYPE OR PRINT NAME)

Date:

_____          ➤  (ATTORNEY FOR _____ )
(TYPE OR PRINT NAME)

Date:

_____          ➤  (ATTORNEY FOR _____ )
(TYPE OR PRINT NAME)

## THE COURT SO ORDERS,

Date:  _____          _____
                                                 JUDICIAL OFFICER

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   ☐   Request for Informal Discovery Conference
   ☐   Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).
3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).
4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Peter Robertson & Linda Robertson IN PRO PER
12855 Autumn Leaves
Victorville, CA 92395

TELEPHONE NO.: 760 957 5618     FAX NO.:

ATTORNEY FOR *(Name):* Pro Per

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk

CASE NAME:

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

AUG 05 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
I. Quincy

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: B C 4 6 6 8 9 1 |
|---|---|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☒ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties         d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve         e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence         f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☒ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is ☒ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 08/05/2011

Peter Robertson
(TYPE OR PRINT NAME)                                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

*Page 1 of 2*

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE

Case Number _____

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

BC466891

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.3(c)).  There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|---|
| Hon. Carolyn B. Kuhl | 1 | 534 | | Hon. Holly E. Kendig | 42 | 416 | |
| Hon. J. Stephen Czuleger | 3 | 224 | | Hon. Mel Red Recana | 45 | 529 | |
| Hon. Luis A. Lavin | 13 | 630 | | Hon. Debre Katz Weintraub | 47 | 507 | |
| Hon. Terry A. Green | 14 | 300 | | Hon. Elizabeth Allen White | 48 | 506 | |
| Hon. Richard Fruin | 15 | 307 | | Hon. Deirde Hill | 49 | 509 | |
| Hon. Rita Miller | 16 | 306 | | Hon. John Shepard Wiley Jr. | 50 | 508 | |
| Hon. Richard E. Rico | 17 | 309 | | Hon. Abraham Khan | 51 | 511 | |
| Hon. Rex Heeseman | 19 | 311 | | Hon. Susan Bryant-Deason | 52 | 510 | |
| Hon. Kevin C. Brazile | 20 | 310 | | Hon. Steven J. Kleifield | 53 | 513 | |
| Hon. Zaven V. Sinanian | 23 | 315 | | Hon. Ernest M. Hiroshige | 54 | 512 | |
| Hon. Robert L. Hess | 24 | 314 | | Hon. Malcolm H. Mackey | 55 | 515 | |
| Hon. Mary Ann Murphy | 25 | 317 | | Hon. Michael Johnson | 56 | 514 | |
| Hon. James R. Dunn | 26 | 316 | | Hon. Ralph W. Dau | 57 | 517 | |
| Hon. Yvette M. Palazuelos | 28 | 318 | | Hon. Rolf M. Treu | 58 | 516 | |
| Hon. Barbara Scheper | 30 | 400 | | Hon. David L. Minning | 61 | 632 | |
| Hon. Alan S. Rosenfield | 31 | 407 | | Hon. Michael L. Stern | 62 | 600 | |
| Hon. Mary H. Strobel | 32 | 406 | | Hon. Kenneth R. Freeman | 64 | 601 | |
| Hon. Charles F. Palmer | 33 | 409 | | Hon. Mark Mooney | 68 | 617 | |
| Hon. Amy D. Hogue | 34 | 408 | | Hon. Ramona See | 69 | 621 | |
| Hon. Daniel Buckley | 35 | 411 | | Hon. Soussan G. Bruguera | 71 | 729 | |
| Hon. Gregory Alarcon | 36 | 410 | | Hon. Ruth Ann Kwan | 72 | 731 | |
| Hon. Joanne O'Donnell | 37 | 413 | | Hon. Teresa Sanchez-Gordon | 74 | 735 | |
| Hon. Maureen Duffy-Lewis | 38 | 412 | | Hon. William F. Fahey | 78 | 730 | |
| Hon. Michael C. Solner | 39 | 415 | | **Hon. Emilie H. Elias\*** | **324** | **CCW** | |
| Hon. Michelle R. Rosenblatt | 40 | 414 | | Other | | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | | | |

**\*Class Actions**
All class actions are initially assigned to Judge Emilie H. Elias in Department 324 of the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005). This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____   JOHN A. CLARKE, Executive Officer/Clerk

By _____, Deputy Clerk

LACIV CCH 190 (Rev. 04/10)
LASC Approved 05-06

NOTICE OF CASE ASSIGNMENT –
UNLIMITED CIVIL CASE

Page 1 of 2

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Seven Rules, as applicable in the Central District, are summarized for your assistance.

### APPLICATION

The Chapter Seven Rules were effective January 1, 1994. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Chapter Seven Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

COMPLAINTS: All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

CROSS-COMPLAINTS: Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Seven Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Seven Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

This is not a complete delineation of the Chapter Seven Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR information and forms visit the Court ADR web application at www.lasuperiorcourt.org (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (Civil only).

**What is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

> **Cases for Which Mediation May Be Appropriate**
> Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

> **Cases for Which Mediation May Not Be Appropriate**
> Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

> **Cases for Which Arbitration May Be Appropriate**
> Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

> **Cases for Which Arbitration May Not Be Appropriate**
> If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

> **Cases for Which Neutral Evaluation May Be Appropriate**
> Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

> **Cases for Which Neutral Evaluation May Not Be Appropriate**
> Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

LAADR 005 (Rev. 05/09)
LASC Approved 10-03

Page 1 of 2

## LOS ANGELES SUPERIOR COURT ADR PROGRAMS

**CIVIL:**

- **Civil Action Mediation** (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.870-3.878, Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- **Retired Judge Settlement Conference**
- **Neutral Evaluation** (Governed by Los Angeles Superior Court Rules, chapter 12.)
- **Judicial Arbitration** (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- **Eminent Domain Mediation** (Governed by Code of Civil Procedure section 1250.420.)
- **Civil Harassment Mediation**
- **Small Claims Mediation**

**FAMILY LAW (non-custody):**

- **Mediation**
- **Forensic Certified Public Accountant (CPA) Settlement Conference**
- **Settlement Conference**
- **Nonbinding Arbitration** (Governed by Family Code section 2554.)

**PROBATE:**

- **Mediation**
- **Settlement Conference**

### NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Select Panel or may hire someone privately, at their discretion. If the parties utilize the Random Select Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

### COURT ADR PANELS

| | |
|---|---|
| **Party Select Panel** | The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Random Select Panel** | The Random Select Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all Random Select Panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Private Neutral** | The market rate for private neutrals can range from $300-$1,000 per hour. |

### ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| LOCATION | ADDRESS | ROOM | CITY | PHONE | FAX |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7060 |
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8656 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-3072 | (310)223-0337 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-3272 | (562)437-3802 |
| Norwalk | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9018 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)568-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)620-3183 | (909)629-6283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-6151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6180 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

Partially Funded by the Los Angeles County Dispute Resolution Program

A complete list of the County Dispute Resolution Programs is available online and upon request in the Clerk's Office

# EXHIBIT  B

1  TUCKER ELLIS & WEST LLP
   MOLLIE F. BENEDICT (STATE BAR NO. 187084)
2  SU-LYN COMBS (STATE BAR NO. 209834)
   WILLIAM DANCE (STATE BAR NO. 230041)
3  515 S. FLOWER STREET, 42ND FLOOR
   LOS ANGELES, CA  90071-2223
4  TELEPHONE:  213.430.3400
   FACSIMILE:  213.430.3409
5

6  Attorneys for Defendant JOHNSON & JOHNSON

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF LOS ANGELES

10

11  PETER ROBERTSON AND KINDRA        )   Case No. BC466891
    ROBERTSON,                        )
12                                    )   [Judge Maureen Duffy-Lewis – Dept. 38]
               Plaintiffs,            )
13                                    )   **ANSWER OF DEFENDANT JOHNSON &**
          v.                          )   **JOHNSON TO PLAINTIFFS'**
14                                    )   **COMPLAINT**
    MCNEIL-PPC, INC. AND JOHNSON AND  )
15  JOHNSON, AND JOHN DOES 1-50,      )
                                      )   Complaint filed: August 5, 2011
16             Defendants.            )
                                      )
17                                    )
                                      )
18                                    )

19  _____

20  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

21        Defendant Johnson & Johnson ("Defendant"), for itself and no other defendant, hereby

22  submits this Answer to the Complaint of Peter Robertson and Kindra Robertson, in Pro Per.

23  ("Plaintiffs").

24        Pursuant to California Code of Civil Procedure section 431.30, this answering Defendant

25  denies generally and specifically each and every allegation of Plaintiffs' Complaint.  In addition,

26  defendant Johnson & Johnson does not manufacture, market, distribute or sell this product or any

27  other product.

28

_____
                 ANSWER OF JOHNSON & JOHNSON

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 3 1 2011

John A. Clarke, Executive Officer/ Clerk
By: Moses Soto, Deputy

TUCKER ELLIS & WEST LLP
Cleveland • Columbus • Denver• Los Angeles• San Francisco

This answering Defendant denies generally and specifically that any conduct, act, or omission to act of this answering Defendant is grounds for liability to Plaintiffs.

This answering Defendant denies generally and specifically that any conduct, act, or omission to act of this answering Defendant, or of any person or entity for whose acts or omissions to act this answering Defendant is legally responsible, proximately caused or contributed in whole or in part to the alleged injuries and/or damages to Plaintiffs.

This answering Defendant denies generally and specifically that Plaintiffs have been injured or damaged in any way whatsoever.

## AFFIRMATIVE DEFENSES

Plaintiffs have failed to identify with specificity the Tylenol product(s) which allegedly caused the injury that is the subject of Plaintiffs' Complaint. Plaintiffs reference only "Tylenol" in their Complaint. Defendant's Answer to Plaintiffs' Complaint, to include the Affirmative Defenses herein, should be construed as applicable to the Tylenol product(s) upon which this lawsuit is based and as applicable to the Tylenol product(s) allegedly ingested by Plaintiffs' decedent.

Discovery and investigation may reveal that any one or more of the following defenses should be available to Defendant in this matter. Defendant, therefore, asserts the following defenses in order to preserve the right to assert them. Upon completion of discovery, and if the facts so warrant, Defendant may withdraw any of these defenses as they deem appropriate. Further, Defendant reserves the right to amend their Answer and Defenses to assert additional defenses, cross-claims, counterclaims and other claims and defenses as discovery proceeds. Without assuming any burden of pleading or proof that would otherwise rest on Plaintiffs, Defendant states as follows:

## FIRST DEFENSE

The Complaint fails to state, in whole or in part, a claim upon which relief can be granted. Defendant reserves the right to move to dismiss the Complaint on this and other bases.

## SECOND DEFENSE

Each and every claim asserted or raised in the Complaint may be time barred, in whole or in part, by the applicable statute of limitations, including but not limited to Code of Civil Procedure § 335.1 and § 338 (a), (d) and (h), or statute of repose and/or may be otherwise untimely.

TUCKER ELLIS & WEST LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

### THIRD DEFENSE

This case may be more appropriately brought in a different venue.

### FOURTH DEFENSE

If Plaintiffs have sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries or losses were caused in whole or in part through the operation of nature or other independent, unforeseeable, superseding or intervening cause or causes.

### FIFTH DEFENSE

Tylenol® has been formulated, designed, tested, manufactured, processed, distributed, and labeled in accordance with the provisions of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.*, and regulations promulgated thereunder. Therefore, Plaintiffs' claims predicated on state tort law are barred, in whole or in part, by the doctrine of federal preemption, the Supremacy Clause of the United States Constitution, Article IV, clause 2, and applicable federal law.

### SIXTH DEFENSE

To the extent that Plaintiffs assert claims based upon an alleged failure by Defendant to warn Plaintiffs directly of alleged dangers associated with the use of Tylenol®, such claims are barred under the learned intermediary doctrine because Defendant discharged its duties to warn in their warnings to prescribing physicians.

### SEVENTH DEFENSE

Plaintiffs' claims are barred because the injuries allegedly sustained by Plaintiffs were not proximately caused by any act or omission of Defendant. Other persons or entities who are not parties to this suit were guilty of negligence which was the sole proximate cause of, or a contributing cause to, the damages alleged in the Complaint. Defendant anticipates more specific information regarding the identity and potential liability of these non-parties will be developed during discovery. Thus, Plaintiffs' recovery against these Defendant, if any, should be reduced pursuant to California Civil Code § 1431.2.

### EIGHTH DEFENSE

The injuries and damages, if any, sustained by Plaintiffs resulted in whole or in part from their own culpable conduct, intentional acts, contributory or comparative negligence, assumption of risk,

ANSWER OF JOHNSON & JOHNSON

TUCKER ELLIS & WEST LLP
Cleveland ♦ Columbus ♦ Denver♦ Los Angeles ♦ San Francisco

and want of care.  Accordingly, any damages recovered should be reduced and/or barred in accordance with the applicable law.

## NINTH DEFENSE

If Plaintiffs have sustained injuries or losses as alleged in the Complaint, such injuries or losses were only sustained after Plaintiffs knowingly, voluntarily, and willfully assumed the risk of any injury as the result of the consumption of, administration of, or exposure to any medicine or pharmaceutical preparation manufactured or distributed by Defendant or other manufacturer. Pursuant to the doctrines of assumption of the risk and/or informed consent, this conduct bars, in whole or in part, the damages that Plaintiffs seek to recover herein.

## TENTH DEFENSE

If Plaintiffs have sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries and losses were caused by the acts and omissions (wrongful or otherwise), negligence, sole fault, misuse, abuse, modification, alteration, omission, or fault of one or more persons or entities over whom Defendant exercises no control and for whom Defendant is not legally responsible, including, without limitation, the Plaintiffs, and for whom Defendant may not be held accountable.

## ELEVENTH DEFENSE

If Plaintiffs were injured by any product manufactured, sold, or distributed by Defendant, to the extent those injuries occurred because the product was used for a purpose other than that for which it was intended, in a manner other than that in which it was intended to be used, and/or in disregard of instructions and direction regarding its use, such misuse was not reasonably foreseeable to Defendant and Plaintiffs' damages should be reduced in whole or in part.

## TWELFTH DEFENSE

If Plaintiffs have sustained injuries or losses as alleged in the Complaint, such injuries or losses resulted from conditions, illnesses, and/or reactions unrelated to the use of the subject product or products, including, but not limited to, Plaintiffs' pre-existing and/or unrelated:   medical, genetic, and/or environmental conditions; diseases; illnesses; allergic, idiosyncratic, or idiopathic reactions; subsequent medical conditions; and/or natural courses of conditions.  Defendant is not responsible for

TUCKER ELLIS & WEST LLP
Cleveland • Columbus • Denver• Los Angeles • San Francisco

4

1    any injuries or losses resulting from such pre-existing and/or unrelated conditions, illnesses, and/or

2    reactions.

### THIRTEENTH DEFENSE

Plaintiffs may have failed to join indispensable parties or real parties in interest necessary for the just adjudication of this matter.

### FOURTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Tylenol® was subject to and received pre-market approval by the FDA under 21 U.S.C. § 301.

### FIFTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the product at issue was made in accordance with the state of the art at the time it was manufactured.

### SIXTEENTH DEFENSE

Plaintiffs' claims are barred in whole or in part under comment *k* to Section 402A of the Restatement (Second) of Torts.

### SEVENTEENTH DEFENSE

Plaintiffs' claims are barred in whole or in part because Defendant provided legally adequate "directions or warnings" as to the use Tylenol® and any other medicine or pharmaceutical preparation Plaintiffs allege to have taken within the meaning of comment *j* to Section 402A of the Restatement (Second) of Torts.

### EIGHTEENTH DEFENSE

Plaintiffs' claims are barred under Sections 2, 4, 6(c), 6(d) and comment *f* to Section 6, of the Restatement (Third) of Torts: Products Liability.

### NINETEENTH DEFENSE

Plaintiffs' claims are barred because the methods, standards, and techniques utilized by Defendant in manufacturing, distributing, marketing, or labeling the subject product and in issuing warnings and instructions with respect to its use, were proper and conformed to the generally recognized, reasonably available, and reliable state of knowledge at the time the drug was manufactured and distributed. Further, Tylenol® was safe for its respective normal and foreseeable

TUCKER ELLIS & WEST LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

5

1  use at all times, not unreasonably dangerous or defective, and its benefits exceeded any associated

2  risks.

### TWENTIETH DEFENSE

There is no practical or technically feasible alternative design that would have reduced the alleged risk without substantially impairing the reasonably anticipated and intended respective functions of Tylenol®.

### TWENTY-FIRST DEFENSE

Plaintiffs' claims are barred, in whole or in part, by their failure to prevent or mitigate damages.

### TWENTY-SECOND DEFENSE

Plaintiffs' claims are barred in whole or in part because Defendant's conduct conforms with medical knowledge.

### TWENTY-THIRD DEFENSE

With respect to each and every cause of action, Plaintiffs cannot state claims founded in strict liability because, among other things, comments $j$ and $k$ to Section 402A of the Restatement (Second) of Torts relegate Plaintiffs' claims to a negligence cause of action.

### TWENTY-FOURTH DEFENSE

With respect to each and every cause of action, Plaintiffs are not entitled to recover because if the product involved was unsafe, which Defendant denies, then the product was unavoidably unsafe as defined in Restatement of Torts. The apparent benefits of the product exceeded any apparent risk given the scientific knowledge available when the product was marketed.

### TWENTY-FIFTH DEFENSE

Defendant's advertisements and labeling with respect to the product which is the subject of this action were not false or misleading and, therefore, constitute protected commercial speech under the applicable provisions of the United States Constitution and the constitution of the State of California.

### TWENTY-SIXTH DEFENSE

The public interest in the benefit and availability of the product which is the subject matter of

TUCKER ELLIS & WEST LLP
Cleveland ♦ Columbus ♦ Denver♦ Los Angeles ♦ San Francisco

6

1   this action precludes liability, if any, resulting from any activities undertaken by Defendant, which

2   were unavoidable given the state of human knowledge at the time those activities were undertaken.

3   With respect to Plaintiffs' claims, if it is determined there exists a risk inherent in the subject product,

4   then such risk, if any, is outweighed by the benefit of the product.

### TWENTY-SEVENTH DEFENSE

6        At all times relevant herein, any product which is the subject matter of this action

7   manufactured and distributed by Defendant in any state in the United States was manufactured and

8   distributed in a reasonable and prudent manner based upon available medical and scientific

9   knowledge and further was manufactured and distributed in accordance with and pursuant to all

10  applicable regulations of the FDA.

### TWENTY-EIGHTH DEFENSE

12       With respect to each and every purported cause of action, the acts of Defendant were at all

13  times done in good faith and without malice.

### TWENTY-NINTH DEFENSE

15       To the extent there were any risks associated with the use of the product which is the subject

16  matter of this action which Defendant knew or should have known and which gave rise to a duty to

17  warn, Defendant at all times discharged such duty through appropriate and adequate warnings in

18  accordance with federal and governing state law.

### THIRTIETH DEFENSE

20       Plaintiffs have not sustained an ascertainable loss of property or money.

### THIRTY-FIRST DEFENSE

22       Plaintiffs have not suffered any actual injury or damages.

### THIRTY-SECOND DEFENSE

24       Plaintiffs' claims are barred under the doctrine of economic loss.

### THIRTY-THIRD DEFENSE

26       Defendant is entitled to a set-off or reduction in any damages which may be awarded to the

27  Plaintiffs for any amounts received from collateral sources.

28

ANSWER OF JOHNSON & JOHNSON

TUCKER ELLIS & WEST LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

**THIRTY-FOURTH DEFENSE**

To the extent that Plaintiffs assert claims based on Defendant's adherence to and compliance with applicable state laws, regulations, and rules, such claims are preempted by federal law under the Final Rule, Requirements on content and format of Labeling for Human Prescription Drug and Biologic Products, FDA Docket No. 2000N-1269 (January 24, 2006).

**THIRTY-FIFTH DEFENSE**

Plaintiffs' claims are barred and/or this Court should defer this matter, in whole or in part, pursuant to the doctrine of primary jurisdiction; the FDA is charged under the law with regulating drugs, including Tylenol®, and is specifically charged with determining the content of warnings and labeling for drugs.

**THIRTY-SIXTH DEFENSE**

To the extent Plaintiffs' claims are based on alleged misrepresentations or omissions made to the FDA, such claims are barred pursuant to *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).

**THIRTY-SEVENTH DEFENSE**

There is no causal relationship between Defendant or its activities described in the Complaint and any injuries or damages allegedly sustained by Plaintiffs.

**THIRTY-EIGHTH DEFENSE**

To the extent Plaintiffs have settled or will in the future settle with any person or entity with respect to the injuries asserted in the Complaint, Defendant's liability, if any, should be reduced accordingly.

**THIRTY-NINTH DEFENSE**

Defendant is not guilty of negligence and violated no duty owing to Plaintiffs.

**FORTIETH DEFENSE**

The extent of any risk associated with the use of Tylenol®, the existence of which is not admitted, was, at the time of the distribution of said product by Defendant, unknown and could not have been known by the use of ordinary care by Defendant.

TUCKER ELLIS & WEST LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

### FORTY-FIRST DEFENSE

Each and every claim asserted or raised in the Complaint is barred by the doctrine of accord and satisfaction, res judicata, payment, and/or release.

### FORTY-SECOND DEFENSE

Plaintiffs' damages, if any, are barred or reduced by the doctrine of avoidable consequences.

### FORTY-THIRD DEFENSE

Defendant denies any liability, but if Johnson & Johnson is ultimately found liable to Plaintiffs, then it shall only be liable for its equitable share of Plaintiffs' recovery since any liability which would be found against Defendant will be insufficient to impose joint liability.

### FORTY-FOURTH DEFENSE

Each and every claim asserted or raised in the Complaint is barred by the doctrines of estoppel or waiver.

### FORTY-FIFTH DEFENSE

This case may be subject to dismissal or stay on the grounds of *forum non conveniens*.

### FORTY-SIXTH DEFENSE

The claims of the Plaintiffs may be barred, in whole or in part, from recovery because they have made statements or taken actions that preclude them from asserting claims or constitute waiver of their claims.

### FORTY-SEVENTH DEFENSE

Plaintiffs' claims are barred because Defendant complied with all applicable state and federal statutes regarding the product in question, including the requirements and regulations promulgated by the U.S. Food and Drug Administration and contained in Chapter 21 of the Code of Federal Regulations as well as the industry standards based upon the state of knowledge existing at the relevant time alleged by the Complaint. Tylenol® was reasonably fit, suitable, and safe for its respective intended uses. In the event that Plaintiffs' claims are not barred, Defendant is entitled to a presumption that the product in question is free from any defect or defective condition as the plans or design for the product or the methods and techniques of manufacturing, inspecting, and testing the product were in conformity with government standards established for the drug industry that were in

TUCKER ELLIS & WEST LLP
Cleveland ♦ Columbus ♦ Denver♦ Los Angeles ♦ San Francisco

1   existence at the time the plans or designs for the product or the methods and techniques of

2   manufacturing, inspecting, and testing the product were adopted.

### FORTY-EIGHTH DEFENSE

4   Plaintiffs received all or substantially all of the benefit from the subject product that Plaintiffs

5   hoped and intended to receive, and, to that extent, any damages and/or restitution that Plaintiffs might

6   be entitled to recover from Defendant must be correspondingly reduced.

### FORTY-NINTH DEFENSE

8   To the extent Plaintiffs' claims are based on a theory providing for liability without proof of

9   causation, the claims violate Defendant's rights under the United States Constitution.

### FIFTIETH DEFENSE

11   The claims of Plaintiffs may be barred, in whole or in part, from recovery due to spoliation of

12   evidence.

### FIFTY-FIRST DEFENSE

14   No act or omission of Defendant was oppressive, fraudulent, or malicious under California

15   Civil Code § 3294, and therefore any award of punitive damages is barred.  Any claim for punitive

16   damages is also barred under California Civil Code § 3294(b).

### FIFTY-SECOND DEFENSE

18   Plaintiffs' claim for punitive damages is subject to the limitations and requirements of the law

19   of the State of California and any other state whose law is deemed to apply in this case.

### FIFTY-THIRD DEFENSE

21   The imposition of punitive or exemplary damages would violate Defendant's constitutional

22   rights, including but not limited to those under the due process clauses in the Fifth and Fourteenth

23   Amendments to the Constitution of the United States,  and the equivalent or correlative applicable

24   provisions in the Constitutions, common law, public policy, applicable statutes and court rules of the

25   applicable states to these amendments and the excessive fines clause in the Eighth Amendment to the

26   Constitution of the United States and the double jeopardy clause in the Fifth Amendment to the

27   Constitution of the United States.  To the extent that punitive damages awarded to Plaintiffs are (1)

28   imposed by a jury that is not provided standards of sufficient clarity for determining the

TUCKER ELLIS & WEST LLP
Cleveland • Columbus • Denver • Los Angeles • San Francisco

appropriateness, and the appropriate size, of such a punitive damages award; is not adequately and clearly instructed on the limits on punitive damages imposed by the principles of deterrence and punishment; is not expressly prohibited from awarding punitive damages, or determining the amount of an award thereof, in whole or in part, on the basis of invidious discriminatory characteristics, including the corporate status, wealth, or state of residence of defendant; or is permitted to award punitive damages under a standard for determining liability for such damages which is vague and arbitrary and does not define with sufficient clarity the conduct or mental state which makes punitive damages permissible; (2) are not subject to independent de novo review by the trial and appellate courts for reasonableness and the furtherance of legitimate purposes on the basis of objective legal standards and in conformity with the United States Constitution as amended or any applicable State constitution; (3) imposed where state law is impermissibly vague, imprecise, or inconsistent; (4) subject to no predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount; or (5) imposed on the basis of anything other than Defendant's conduct within the State where Plaintiffs reside, or in any other way subjecting Defendant to impermissible multiple punishment for the same alleged wrong.

## FIFTY-FOURTH DEFENSE

Defendant specifically incorporate by reference all standards of limitations regarding the determination and enforceability of punitive damage awards as applied to the state and federal courts of the applicable states under the Due Process clause of the Fourteenth Amendment to the United States Constitution.

## FIFTY-FIFTH DEFENSE

With respect to Plaintiffs' demand for punitive damages, Defendant specifically incorporates by reference all standards of limitations regarding the determination and enforceability of punitive damage awards that arise under *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001); *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), and their progeny, as applied by the federal courts of appeals, together with all such standards applicable under any other state's law.

ANSWER OF JOHNSON & JOHNSON

TUCKER ELLIS & WEST LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

TUCKER ELLIS & WEST LLP
Cleveland ● Columbus ● Denver● Los Angeles ● San Francisco

### FIFTY-SIXTH DEFENSE

Defendant asserts the provisions of all applicable statutory caps on damages of any sort, including punitive, non-economic or exemplary damages, under the laws of the applicable states.

### FIFTY-SEVENTH DEFENSE

Defendant denies that any indebtedness in any sum whatsoever to Plaintiffs and will demonstrate to this Court and the jury that they are not responsible for any injuries or damages that may have occurred according to the allegations set forth in Plaintiffs' Complaint.

### FIFTY-EIGHTH DEFENSE

The averments of the Complaint fail to give Defendant reasonable notice of facts sufficient to evaluate all of their defenses. For that reason, Defendant affirmatively pleads improper venue, arbitration, release, assumption of risk, statute of limitations, discharge in bankruptcy, fraud, illegality, *res judicata*, statute of frauds, estoppels, laches, and waiver.

### FIFTY-NINTH DEFENSE

Defendant avers that the subject product was not subject to a recall.

### SIXTIETH DEFENSE

Defendant avers that in the event the product allegedly used by Plaintiffs' decedent was subject to a recall, the underlying basis for the recall is in no way related to the injuries allegedly suffered by Plaintiff; moreover the recalled product met internal manufacturing specifications.

### DEMAND FOR JURY TRIAL

Defendant specifically request and demand a trial by jury as to all issues so triable.

### PRAYER

**WHEREFORE,** this answering Defendant prays for judgment as follows:

1. That Plaintiffs take nothing by way of the Complaint on file herein;

2. That this answering Defendant be awarded judgment against Plaintiffs and awarded its costs and attorneys' fees herein incurred; and

1          3.     That this answering Defendant be awarded such further and other relief as this court

2    deems just and proper.

3

4    DATED:  October 31, 2011                    TUCKER ELLIS & WEST LLP

5

6

7                                               By:

8                                               Su-Lyn Combs
                                                Attorneys for Defendant JOHNSON &
                                                JOHNSON
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TUCKER ELLIS & WEST LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

<u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles. I am over the age of eighteen years and not a party to the within entitled action. My business address is 515 South Flower Street Forty-Second Floor, Los Angeles, CA 90071-2223.

On October 31, 2011, I served the foregoing document(s) described as **ANSWER OF DEFENDANT JOHNSON & JOHNSON TO PLAINTIFFS' COMPLAINT** on the interested party(ies) in this action as follows:

*[See Attached Service List.]*

(☒) **BY MAIL:** By placing a true copy thereof enclosed in a sealed envelope(s) addressed as above, and placing each for collection and mailing on that date following ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

( ) **BY OVERNIGHT DELIVERY**: I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed as noted below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

( ) **BY FACSIMILE:** Based on agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. The telephone number of the sending fax machine was 213.430.3409. The sending facsimile machine issued a transmission report confirming the transmission was complete and without error. A copy of that report is attached.

( ) **BY E-MAIL OR ELECTRONIC TRANSMISSION**: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

(☒) **STATE**: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

( ) **FEDERAL**: I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 31, 2011, at Los Angeles, California.

CYNTHIA M. HARRIS

012180.003506 743832.1

1

SERVICE LIST

2

Peter & Kindra Robertson                    *In Pro Per*
12955 Autumn Leaves
3    Victorville, CA  92395
760-951-5618

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

012180.003506 743832.1

EXHIBIT  C

190 Cal.App.4th 23, 117 Cal.Rptr.3d 791, 10 Cal. Daily Op. Serv. 14,363, 2010 Daily Journal D.A.R. 17,352

Briefs and Other Related Documents
Judges, Attorneys and Experts

Court of Appeal, Second District, Division 5, California.
Larry R. STEWART et al., Plaintiffs and Respondents,
v.
UNION CARBIDE CORPORATION, Defendant and Appellant.

No. B216193.
Nov. 16, 2010.
Rehearing Denied Dec. 8, 2010.
Review Denied March 2, 2011.

**Background:** Plumber and plumber's wife brought action against asbestos supplier for negligence, strict products liability, and loss of consortium. The Superior Court, Los Angeles County, No. BC384224, Alan S. Rosenfield, J., entered judgment on special jury verdict for plumber, and awarded punitive damages. Supplier appealed.

**Holdings:** The Court of Appeal, Armstrong, J., held that:
(1) sophisticated intermediary defense did not shield supplier from liability;
(2) verdict required at least nine jurors to agree on an entire set of percentages allocating fault;
(3) supplier failed to show that nonparty entities were partly at fault;
(4) evidence supported finding that asbestos supplier acted with oppression, fraud, or malice; and
(5) punitive damages award did not violate due process.

Affirmed.


West Headnotes


[1] ☑ KeyCite Citing References for this Headnote

☞30 Appeal and Error
    ☞30V Presentation and Reservation in Lower Court of Grounds of Review
        ☞30V(B) Objections and Motions, and Rulings Thereon
            ☞30k232 Scope and Effect of Objection
                ☞30k232(3) k. Instructions. Most Cited Cases

Asbestos supplier did not waive the issue of a "sophisticated purchaser defense" to products liability based on failure to warn, where supplier raised the issue by requesting an instruction that "where the risk of using a hazardous product is already known, or should be known, by the purchaser of that product, the product supplier has no duty to warn of the product's potential hazards."

[2] ☑ KeyCite Citing References for this Headnote

☞313A Products Liability
    ☞313AII Elements and Concepts
        ☞313Ak163 Persons Liable
            ☞313Ak174 k. Components and raw materials; bulk suppliers. Most Cited Cases

Under the bulk supplier/component parts doctrine, the manufacturer of a product component or

raw material is not liable for injuries caused by the finished product unless it appears that the component itself was defective when it left the manufacturer.

[3] ☑ KeyCite Citing References for this Headnote

313A Products Liability
   313AII Elements and Concepts
      313Ak163 Persons Liable
         313Ak174 k. Components and raw materials; bulk suppliers. Most Cited Cases

313A Products Liability ☑ KeyCite Citing References for this Headnote
   313AIII Particular Products
      313Ak201 k. Asbestos. Most Cited Cases

Raw asbestos is a defective product, for purposes of the bulk supplier/component parts doctrine.

[4] ☑ KeyCite Citing References for this Headnote

313A Products Liability
   313AII Elements and Concepts
      313Ak132 Warnings or Instructions
         313Ak136 k. Learned intermediary. Most Cited Cases

The sophisticated intermediary defense to failure to warn, where it applies at all, applies only if a manufacturer provided adequate warnings to the intermediary.

[5] ☑ KeyCite Citing References for this Headnote

313A Products Liability
   313AII Elements and Concepts
      313Ak132 Warnings or Instructions
         313Ak136 k. Learned intermediary. Most Cited Cases

313A Products Liability ☑ KeyCite Citing References for this Headnote
   313AIII Particular Products
      313Ak201 k. Asbestos. Most Cited Cases

Joint compound manufacturers' alleged failure to give warnings to consumers did not absolve asbestos supplier of responsibility for its own failure to warn the joint compound manufacturers about the dangers of asbestos, under a sophisticated intermediary defense to plumber's products liability and negligence claims based on plumber's exposure to joint compound.

See Annot., *Products liability: liability of manufacturer or seller as affected by failure of subsequent party in distribution chain to remedy or warn against defect of which he knew (1986) 45 A.L.R.4th 777; Cal. Jur. 3d, Products Liability, § 63 et seq.;* 6 Witkin, Summary of Cal. Law (2010 supp.) Torts, § 1174A.

[6] ☑ KeyCite Citing References for this Headnote

30 Appeal and Error
   30X Record
      30X(M) Questions Presented for Review
         30k704.2 k. Findings and decision. Most Cited Cases

Asbestos supplier failed to provide the Court of Appeal with a full statement of the evidence on its contention that there was no evidence to support the jury's finding that joint compound manufacturer used supplier's asbestos during the time when plumber was exposed to asbestos, and for that reason alone could not prevail on the contention, even though supplier cited portions of the record indicating that supplier had supplied manufacturer with asbestos, and that manufacturer removed asbestos from its joint compound by 1975, where plumber began working as a plumber or apprentice in 1968, and supplier failed to cite plumber's testimony that during his apprenticeship and on several specified job sites, manufacturer's joint compound was used about 10 percent of the time.

[7] ☑ KeyCite Citing References for this Headnote

⇨388 Trial
  ⇦388V Arguments and Conduct of Counsel
    ⇦388k113 Statements as to Facts, Comments, and Arguments
      ⇦388k121 Comments on Evidence or Witnesses
        ⇦388k121(1) k. In general. Most Cited Cases

⇦388 Trial ☑ KeyCite Citing References for this Headnote
  ⇦388V Arguments and Conduct of Counsel
    ⇦388k133 Action of Court
      ⇦388k133.1 k. In general; duty of court. Most Cited Cases

Plaintiffs' counsel's statement in closing argument that there was no evidence that any of the nonparty entities listed on the special verdict form bore any fault and that defendant had not met its burden of proof on that point did not require trial court to re-instruct the jury that arguments of counsel are not the law and that the allocation of fault is for the jury to decide.

[8] ☑ KeyCite Citing References for this Headnote

⇦388 Trial
  ⇦388IX Verdict
    ⇦388IX(A) General Verdict
      ⇦388k321.5 k. Assent of required number of jurors. Most Cited Cases

In a trial requiring the agreement of at least nine jurors on each verdict and each question, on a special verdict question about the percentage allocation of fault among numerous entities, a verdict required at least nine jurors to agree on an entire set of percentages.

[9] ☑ KeyCite Citing References for this Headnote

⇦313A Products Liability
  ⇦313AIII Particular Products
    ⇦313Ak201 k. Asbestos. Most Cited Cases

⇦313A Products Liability ☑ KeyCite Citing References for this Headnote
  ⇦313AIV Actions
    ⇦313AIV(D) Questions of Law or Fact
      ⇦313Ak413 Defenses and Mitigating Circumstances
        ⇦313Ak415 k. Contributory and comparative fault in general; apportionment. Most Cited Cases

Asbestos supplier failed to meet its burden on appeal to establish that substantial evidence did not support jury verdict failing to allocate fault for plaintiff's mesothelioma to several nonparty entities, since the jury could well have found that exposures caused by nonparty entities were not substantial

factors in causing plaintiff's injury.

[10] ☑ KeyCite Citing References for this Headnote

☞313A Products Liability
  ☞313AII Elements and Concepts
    ☞313Ak179 Fault of Plaintiff or Third Persons
      ☞313Ak183 k. Comparative negligence and apportionment of fault. Most Cited Cases

☞313A Products Liability ☑ KeyCite Citing References for this Headnote
  ☞313AIII Particular Products
    ☞313Ak201 k. Asbestos. Most Cited Cases

☞313A Products Liability ☑ KeyCite Citing References for this Headnote
  ☞313AIV Actions
    ☞313AIV(C) Evidence
      ☞313AIV(C)2 Presumptions and Burden of Proof
        ☞313Ak353 Defenses and Mitigating Circumstances
          ☞313Ak355 k. Contributory and comparative fault in general; apportionment. Most Cited Cases

To allocate fault to other entities on plumber's negligence and strict products liability claims against asbestos supplier, supplier had the burden to establish concurrent or alternate causes by proving: that plumber was exposed to defective asbestos-containing products of other companies; that the defective designs of the other companies' products were legal causes of plumber's injuries; and the percentage of legal cause attributable to the other companies.

[11] ☑ KeyCite Citing References for this Headnote

☞30 Appeal and Error
  ☞30XVI Review
    ☞30XVI(I) Questions of Fact, Verdicts, and Findings
      ☞30XVI(I)2 Verdicts
        ☞30k1004 Amount of Recovery
          ☞30k1004(6) Particular Cases and Items
            ☞30k1004(11) k. Exemplary or punitive damages. Most Cited Cases

In reviewing a challenge to the substantial evidence for punitive damages, courts inquire whether the record contains substantial evidence to support a determination by clear and convincing evidence. West's Ann.Cal.Civ.Code § 3294(a).

[12] ☑ KeyCite Citing References for this Headnote

☞30 Appeal and Error
  ☞30XVI Review
    ☞30XVI(K) Error Waived in Appellate Court
      ☞30k1079 k. Insufficient discussion of objections. Most Cited Cases

Asbestos supplier failed to meet its burden on appeal to set forth all material evidence on its contention that substantial evidence did not support punitive damages on plumber's negligence and strict products liability claims, as required to avoid waiver of the contention, where supplier cited the evidence in its favor, pointed out the ways in which it contended it controverted or impeached plumber's evidence, and interpreted the evidence in the light most favorable to itself. West's Ann.Cal.Civ.Code § 3294(a).

[13] ☑ KeyCite Citing References for this Headnote

☞115 Damages
  ☞115IX Evidence
    ☞115k183 Weight and Sufficiency
      ☞115k189.5 k. Punitive damages. Most Cited Cases

    Jury's finding that asbestos supplier acted with oppression, fraud, or malice in failing to warn, in awarding punitive damages to plumber who suffered from mesothelioma, was supported by substantial evidence, including testimony of president of manufacturer of joint compound used by plumber that supplier claimed the dangers of asbestos were "no big deal," and evidence that, after concluding internally that it would be prudent to assume that its asbestos would "behave like other asbestos," supplier intimated in letters to customers that the risk of mesothelioma from its asbestos might be different from that of other asbestos. West's Ann.Cal.Civ.Code § 3294(a).

[14] ☑ KeyCite Citing References for this Headnote

☞157 Evidence
  ☞157IV Admissibility in General
    ☞157IV(D) Materiality
      ☞157k146 k. Tendency to mislead or confuse. Most Cited Cases

    Trial court acted within its discretion in finding that asbestos supplier's former employee's testimony about whether he felt safe when he worked at asbestos facility, offered to show that supplier did not act with oppression, fraud, or malice supporting punitive damages in failing to warn of the dangers of asbestos, was unduly prejudicial, where other evidence about the health of workers at the facility had been excluded, and manager's state of mind vis-à-vis his own risk was not the issue. West's Ann.Cal.Evid.Code § 352; West's Ann.Cal.Civ.Code § 3294(a).

[15] ☑ KeyCite Citing References for this Headnote

☞30 Appeal and Error
  ☞30XVI Review
    ☞30XVI(J) Harmless Error
      ☞30XVI(J)11 Exclusion of Evidence
        ☞30k1056 Prejudicial Effect
          ☞30k1056.1 In General
            ☞30k1056.1(4) Particular Actions or Issues
              ☞30k1056.1(10) k. Negligence and torts in general. Most Cited Cases

    Any error in trial court's exclusion of asbestos supplier's former employee's testimony about whether he felt safe when he worked at asbestos facility was not prejudicial to supplier, in jury verdict awarding punitive damages based on a finding that supplier acted with oppression, fraud, or malice in failing to warn customers of the dangers of asbestos, since the former manager was a long term and senior employee who still consulted for supplier, and the jury could easily have deduced from his testimony that he worked around asbestos that he did so voluntarily, with no ill effect or fear of ill effect. West's Ann.Cal.Civ.Code § 3294(a).

[16] ☑ KeyCite Citing References for this Headnote

☞157 Evidence
  ☞157X Documentary Evidence
    ☞157X(C) Private Writings and Publications
      ☞157k351 k. Unofficial or business records in general. Most Cited Cases

A chemical company's memo stating that the company believed an asbestos supplier had claimed that supplier had "sufficient toxicological data that places" supplier's asbestos "in the nuisance dust category and distinctly separates it from emotional generalizations associated with generic asbestos" was not rendered inadmissible against asbestos supplier by the hearsay rule, on the issue of whether supplier acted with oppression, fraud, or malice supporting punitive damages in failing to warn customers of the dangers of asbestos, where the memo was a business record found in the asbestos supplier's files. West's Ann.Cal.Civ.Code § 3294.

[17] ☑ KeyCite Citing References for this Headnote

🗢30 Appeal and Error
  🗢30XVI Review
    🗢30XVI(J) Harmless Error
      🗢30XVI(J)10 Admission of Evidence
        🗢30k1050 Prejudicial Effect in General
          🗢30k1050.1 Evidence in General
            🗢30k1050.1(8) Particular Types of Evidence
              🗢30k1050.1(10) k. Admissions, declarations, and hearsay. Most Cited Cases

Any error under the hearsay rule in the admission of chemical company's memo stating that the company believed an asbestos supplier had claimed that supplier had "sufficient toxicological data that places" supplier's asbestos "in the nuisance dust category and distinctly separates it from emotional generalizations associated with generic asbestos" was not prejudicial to supplier in jury's finding that supplier acted with oppression, fraud, or malice in failing to warn customers of the dangers of asbestos, in awarding punitive damages, where a letter from supplier to chemical company disavowing such a claim was admitted as part of the same exhibit. West's Ann.Cal.Civ.Code § 3294.

[18] ☑ KeyCite Citing References for this Headnote

🗢313A Products Liability
  🗢313AIII Particular Products
    🗢313Ak201 k. Asbestos. Most Cited Cases

🗢313A Products Liability ☑ KeyCite Citing References for this Headnote
  🗢313AIV Actions
    🗢313AIV(E) Instructions
      🗢313Ak427 k. Warnings or instructions. Most Cited Cases

🗢388 Trial ☑ KeyCite Citing References for this Headnote
  🗢388IV Reception of Evidence
    🗢388IV(A) Introduction, Offer, and Admission of Evidence in General
      🗢388k52 Effect of Admission of Evidence
        🗢388k54 Restriction to Special Purpose
          🗢388k54(1) k. In general. Most Cited Cases

Jury instruction that evidence of former Occupational Safety and Health Act (OSHA) standards on asbestos was admitted "for the limited purpose of notice or as to what information was available" and that the jury must not follow OSHA standards "as the law that applies to this case" did not improperly preclude asbestos supplier from arguing, on the issues of defect and warning, that OSHA regulations were "the law," and that supplier could reasonably expect those governed by the law to follow the regulation, in plumber's action for negligence and products liability based on failure to warn. West's Ann.Cal.Labor Code § 6300 et seq.

[19] ☑ KeyCite Citing References for this Headnote

☞ 92 Constitutional Law
　☞ 92XXVII Due Process
　　☞ 92XXVII(G) Particular Issues and Applications
　　　☞ 92XXVII(G)19 Tort or Financial Liabilities
　　　　☞ 92k4427 k. Punitive damages. Most Cited Cases

☞ 115 Damages ☑ KeyCite Citing References for this Headnote
　☞ 115V Exemplary Damages
　　☞ 115k94 Measure and Amount of Exemplary Damages
　　　☞ 115k94.10 Amount Awarded in Particular Cases
　　　　☞ 115k94.10(2) k. Products liability. Most Cited Cases

　Products liability punitive damages award of $6 million against asbestos supplier, on a verdict awarding $2.2 million for economic damages and $1 million for non-economic damages to plumber and his wife, did not exceed the amount allowable under due process clause, even though the compensatory verdict was reduced to 85 percent for supplier's share of fault, and the verdict was further reduced by $1,782,375 in credits based on settlements with other defendants, where plaintiffs' case was that supplier profited from the sale of a dangerous substance, that it knew the dangers of its product, that it failed to warn consumers of those dangers, and that plumber developed a fatal cancer as a result. U.S.C.A. Const.Amend. 14.

**794** Horvitz & Levy, David M. Axelrad, Mary–Christine Sungaila, Daniel J. Gonzalez, Encino; Linder Grode Stein Yankelevitz Sunshine Regenstreif & Taylor, Kevin C. Mayer, Raúl Pérez, John M. Kennedy, Los Angeles; Orrick, Herrington & Sutcliffe, Morton D. Dubin, II, for Defendant and Appellant.

Paul & Hanley, Dean A. Hanley, Kelly A. McMeekin, Anthony Vieira, Berkeley; Farrise Law Firm, Los Angeles, Simona A. Farrise, for Plaintiffs and Respondents.

ARMSTRONG, J.
　**25** Defendant and appellant Union Carbide Corporation appeals from the judgment entered against it and in favor of plaintiffs and respondents Larry Stewart and Janet Stewart, on the Stewarts' complaint. We affirm.

Factual and Procedural Summary
　Larry Stewart worked as a plumber, or plumber's apprentice, from 1968 until his diagnosis with mesothelioma in 2007. After his diagnosis, he sued Union Carbide (and others, who settled prior to trial) for fraud, negligence, and strict products liability on failure to warn and design defect **795** theories. Janet Stewart, Larry Stewart's wife, sued for loss of consortium. Plaintiffs sought punitive damages.

　**26** At trial, Stewart testified that throughout his career, he worked on large commercial and residential construction projects. He worked near drywallers on "just about every job." Drywallers use joint compound, and plaintiffs presented evidence that during relevant time periods, joint compound contained asbestos which was released when the walls were sanded. Stewart testified that on most of the jobs he worked on, the drywallers used joint compound manufactured by a company called Hamilton Materials, though USG joint compound was used some instances. Plaintiffs presented evidence that USG and Hamilton Materials obtained asbestos from Union Carbide, which mined chrysotile asbestos in Coalinga, California and sold that asbestos under the brand name Calidria.

　Stewart described his exposure to asbestos from joint compound. Drywallers followed the plumbers, putting up walls as soon as the plumbers finished. The drywallers put up drywall, taped the joints, put joint compound over the tape and over the screws or nails, then sanded. Sanding created a fine dust, like talcum powder. The dust formed a white cloud which got into hair and clothes and filled not just the room the drywallers were working in, but adjacent rooms. Laborers would come

through to sweep, stirring the dust into the air and creating a dust storm. Once the sanding started, the job was "a total mess," with "dust everywhere." There was no way to avoid breathing this dust.

Stewart also testified that although he saw many boxes of joint compound during his career, he never saw a box with any warning about the hazards of asbestos, or even a warning that the compound contained asbestos, something he did not know. He never received any OSHA warning, or any other warning, on that subject. Safety meetings were dedicated to such things as the hazards of extension cords and falling objects.

Stewart knew that construction sites would be dirty, but never knew that there was anything in the dust created by sanded joint compound that would be hazardous to his health. To the contrary, he assumed that if a product was available on the market, it was safe to use.

Stewart testified concerning the mentally and physically debilitating effects of his disease and of his treatment, which had included six rounds of chemotherapy, with three more rounds of experimental treatment recommended. He described the effect of his disease on his life and on his family.

Through expert witnesses, plaintiffs presented evidence that Larry Stewart's disease was caused by asbestos, that medical tests showed that there were asbestos fibers in his lungs, that such fibers are not found in the general *27 population, and that he had had a significant exposure to asbestos. Based on studies, plaintiffs' expert opined that a person exposed to dust created when asbestos-containing joint compound was sanded was at risk of <u>mesothelioma</u>, even if the person was a bystander.

Plaintiff also presented evidence on Union Carbide's knowledge of the dangers of asbestos, economic damages and other issues.

At the close of evidence, the trial court directed a verdict for Union Carbide on the cause of action for fraud. The case went to the jury on causes of action for negligence and strict products liability on both failure to warn and design defect/consumer expectations theories. The jury found for plaintiffs on all those causes of action. The jury was asked to allocate **796 fault between a large number of entities, described in the briefs herein as suppliers of asbestos-containing materials, and found that Union Carbide accounted for 85 percent of the fault, and Hamilton Materials for 15 percent.

The jury awarded Larry Stewart $2.2 million for past and future economic damages, and $500,000 for past and future non-economic damages, and awarded Janet Stewart past non-economic damages of $250,000 and future non-economic damages of $250,000. For purposes of punitive damages, the jury also found that Union Carbide had acted with malice, oppression, or fraud. After a trial on punitive damages, the jury awarded $6 million in punitive damages.

After applying $1,782,375 in credits based on the pre-verdict settlements with other defendants and making appropriate calculations based on Union Carbide's 85 percent share of fault,[FN1] the court entered judgment in favor of Larry Stewart in the amounts of $417,625 in economic damages and $425,000 in non-economic damages and $6 million in punitive damages, and in favor of Janet Stewart in the amount of $425,000 in non-economic damages. Union Carbide's post-trial motions for judgment notwithstanding the verdict and for a new trial were denied.

> FN1. The court's nine page Ruling on Plaintiffs' Post–Trial Motion to Determine Judgment Credits and Enter Judgment and Defendant Union Carbide's Motion for Modification of Judgment to Reflect Application of Settlement Credits, reflects $4.375 million in settlements and details the methods the court used to arrive at the correct credits.

Discussion
A. The "sophisticated purchaser defense" to failure to warn

[1] ☑ Union Carbide asked the court to instruct the jury on what it calls a sophisticated purchaser defense, and on appeal argues that the court wrongly *28 refused the instruction. There is some controversy concerning the instructions actually presented to the court,[FN2] but in general, Union Carbide asked to have the jury instructed that "where the risk of using a hazardous product is already known, or should be known, by the purchaser of that product, the product supplier has no duty to warn of the product's potential hazards," that a bulk supplier's or raw materials supplier's duty to warn "is measured by what is generally known or should be known to purchasers of the raw product, rather than by the individual plaintiff's subjective knowledge," and that "the sale of a raw material to a sophisticated intermediary purchaser who knew or should have known of the risks of that raw material cannot be the legal cause of any harm the raw material may cause."

> FN2. The record on the proposed instructions was sufficiently unclear that this court appointed the trial judge as a referee to conduct record correction proceedings. The referee's report convinces us that Union Carbide raised this issue, and that we disagree with plaintiffs' contention that the issue was waived.

Union Carbide argues that such an instruction falls under the rationale of *Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 74 Cal.Rptr.3d 108, 179 P.3d 905 and is suggested by that case. It is not. *Johnson's* sole reference to a sophisticated purchaser is in a discussion of treatises and out-of-state cases. ( *Id.* at p. 65, 74 Cal.Rptr.3d 108, 179 P.3d 905.) Nothing in the discussion suggests the rule Union Carbide seeks.

In *Johnson,* the plaintiff was injured while repairing an air conditioning unit which had no warning of a dangerous condition which could arise during repair. However, the plaintiff was a professional, **797 EPA certified, air conditioning repair technician, who, the court concluded, could reasonably have been expected to know of just that danger. *Johnson* reiterated the rule that "manufacturers have a duty to warn *consumers* about the hazards inherent in their products" ( *id.* at p. 64, 74 Cal.Rptr.3d 108, 179 P.3d 905, italics added), but recognized an exception to that rule, holding that "sophisticated *users* need not be warned about dangers of which they are already aware or should be aware." ( *Id.* at p. 65, 74 Cal.Rptr.3d 108, 179 P.3d 905, italics added.) In such circumstances, the court held, failure to warn was not the legal cause of the harm. Instead, "the user's knowledge of the dangers is the equivalent of prior notice." ( *Ibid.*) The court held that "individuals who represent that they are trained or are members of a sophisticated group of users are saying to the world that they possess the level of knowledge and skill associated with that class. If they do not actually possess that knowledge and skill, that fact should not give rise to liability on the part of the manufacturer." ( *Id.* at p. 71, 74 Cal.Rptr.3d 108, 179 P.3d 905.)

*Johnson* did not impute an intermediary's knowledge to the plaintiff, or charge him with any knowledge except that which had been made available *29 to him through his training and which, by reason of his profession and certification, he should have had. In contrast, Union Carbide's proposed instruction is not based on the theory that Larry Stewart had the opportunity to acquire any knowledge of the dangers of asbestos, let alone the obligation to do so. Instead, it contends that its customers, Hamilton and USG, knew or should have known (from public sources) of the dangers of asbestos, and that its duty to warn Stewart is measured by the knowledge Hamilton and USG should have had. It is apparent that such a theory has nothing to do with *Johnson.*

[2] ☑ [3] ☑ Actually, the proposed defense is an extension not of *Johnson,* but of the bulk supplier/component parts doctrine. Under that doctrine, the manufacturer of a product component or raw material is not liable for injuries caused by the finished product unless it appears that the component itself was defective when it left the manufacturer. ( *Tellez–Cordova v. Campbell–Hausfeld/Scott Fetzger Co.* (2004) 129 Cal.App.4th 577, 581, 28 Cal.Rptr.3d 744.) Asbestos suppliers have sought the protection of that rule, but it has not been afforded to them, because raw asbestos is a defective product. ( *Jenkins v. T & N PLC* (1996) 45 Cal.App.4th 1224, 53 Cal.Rptr.2d 642; *Garza v. Asbestos Corp., Ltd.* (2008) 161 Cal.App.4th 651, 74 Cal.Rptr.3d 359; *Arena v. Owens–Corning Fiberglas Corp.* (1998) 63 Cal.App.4th 1178, 1188, 74 Cal.Rptr.2d 580.) Union Carbide does not

address these cases with any specificity, but only refers to plaintiffs' reliance on cases which pre-date _Johnson._ Union Carbide argues that after that case, even a bulk supplier's duty to warn "should depend on what the purchaser already knows or reasonably should know." As we have seen, however, _Johnson_ was not concerned with the knowledge of the purchaser, but with the knowledge of the user. Union Carbide's argument is unpersuasive.

Union Carbide cites authority involving the liability of a supplier to an employee of a sophisticated purchaser who is the employer. The employer-employee relationship is different than the relationship between a sophisticated user intermediary and an unknown number of non-employees who may at some point work with the sophisticated purchaser's product.

[4] ☑ [5] ☑ We note, too, that although Union Carbide alludes to the sophisticated intermediary doctrine, that doctrine, where it applies at all, applies only if a **798 manufacturer provided adequate warnings to the intermediary. ( _Carmichael v. Reitz_ (1971) 17 Cal.App.3d 958, 989, 95 Cal.Rptr. 381; _Persons v. Salomon North America, Inc._ (1990) 217 Cal.App.3d 168, 170–172, 265 Cal.Rptr. 773; _Torres v. Xomox Corp._ (1996) 49 Cal.App.4th 1, 21, 56 Cal.Rptr.2d 455.) Union Carbide did not seek an instruction under that theory, but instead argued that it was entitled to rely on intermediaries to acquire their own knowledge and to provide their own warnings. We see no basis in law *30 for such an instruction. Union Carbide gave no warning and could not therefore rely upon the intermediary, even if sophisticated, to pass on or give warnings. If both Union Carbide and the sophisticated intermediary failed to give warnings, that should not absolve Union Carbide of responsibility.

[6] ☑ In this portion of its brief, Union Carbide also argues that there was no evidence to support the jury's finding that USG used Union Carbide asbestos in the relevant time periods. In support, it provides several citations to the reporter's transcript. Most are of arguments of counsel. One is to actual testimony, part of plaintiffs' cross-examination of a defense expert witness, Donald Marano. In the cited portion of the record, Marano testified that Union Carbide _had_ supplied USG with asbestos, but that he could not recall the time periods in which that happened. Union Carbide also cites evidence, from one of plaintiffs' experts, that USG removed asbestos from its joint compound by 1975. From this, Union Carbide argues that this was before Larry Stewart was exposed to USG joint compound at a Mission Viejo job site.

Union Carbide has not provided us with a full statement of the evidence, and for that reason alone cannot prevail on this contention. ( _In re Marriage of Ananeh–Firempong_ (1990) 219 Cal.App.3d 272, 278, 268 Cal.Rptr. 83; _In re Hoffman's Estate_ (1963) 213 Cal.App.2d 635, 639, 29 Cal.Rptr. 60.) We note, too, that our examination of the record reveals that Larry Stewart's testimony that he saw USG joint compound on job sites was not limited to a Mission Viejo job site. In response to specific questions, he testified that during his apprenticeship and on several specified job sites, USG joint compound was used about 10 percent of the time. Finally, the fact that Union Carbide's expert could not remember the relevant time periods, does not establish that plaintiffs' evidence was deficient.

## B. The jury's allocation of fault

At the request of both parties, the court instructed the jury pursuant to CACI No. 406 that Union Carbide "claims that the negligence or fault of multiple other asbestos product manufacturers, suppliers, distributors, employers and/or contractors was a substantial factor in causing plaintiffs' harm. To succeed on this claim, Union Carbide Corporation must prove both of the following: 1. That those other asbestos product manufacturers, suppliers, distributors, employers, and/or contractors were negligent or at fault; and 2. That the negligence or fault of those other asbestos product manufacturers, suppliers, distributors, employers and/or contractors was a substantial factor in causing plaintiffs' harm. [¶] If you find that the negligence or fault of more than one person including Union Carbide Corporation, and one or more other asbestos product manufacturers, suppliers, distributors, employers, or contractors was a substantial factor in causing plaintiffs' harm, you must then decide *31 how much responsibility each has by assigning percentages of responsibility to each person listed on the verdict form...."

**799 The jury was asked, in question 21 of the special verdicts, "If 100% represents the total

fault that was the cause of plaintiffs' injury, what percentage of this 100% was due to the fault of the defendant, Union Carbide Corporation, and other identifiable persons or entities named below?" Forty-seven such persons or entities were named. The jury allocated 85 percent of the fault to Union Carbide, 15 percent to Hamilton, and nothing to the other entities.

Union Carbide contends that the jury's allocation of fault should be set aside for three reasons: the court prejudicially erred when it failed to give a corrective instruction after plaintiffs' counsel's argument; the court prejudicially erred in its answer to a jury question; and because there was no substantial evidence for the jury's findings.

## 1. The jury instructions

[7] ☑ In closing, plaintiffs' counsel made arguments based on CACI No. 406, arguing that Union Carbide had not met its burden of proof and that there was no evidence that any of the other entities listed on the special verdict form bore any fault. The next day, after the jury had retired to deliberate, Union Carbide argued that counsel's argument was improper in that it suggested that Union Carbide bore the burden of proving specific percentages of fault. It asked the court to instruct the jury that "the argument of counsel is not the law in this case, the law is as I instructed you prior to closing argument of counsel. Should you find that the negligence or fault of more than one person was a substantial factor in causing plaintiff's harm, it is up to you to decide how much responsibility each has by assigning percentages of responsibility to each person listed on the verdict form."

The court refused the instruction, ruling that "it's within the fair bounds of argument to comment on the other side's failure to provide substantive evidence on a subject. And the jury instruction, though, is clear that the jury makes the decision. And I believe that, because of that, there's no need for further instruction."

On appeal, Union Carbide argues that the court's refusal to give the instruction constituted prejudicial error. We see none. The jury had already been instructed on everything in the proposed instruction: arguments of counsel are not the law, and the allocation of fault is for the jury to decide. The trial court had no reason to give the additional instruction and committed no error by refusing to give it.

**\*32** Union Carbide's second argument on the jury instructions concerns an instruction given in response to a jury question.

After closing arguments, the jury was correctly instructed that "At least nine jurors must agree on each verdict and on each question that you are asked to answer. However, the same jurors do not have to agree on each verdict or each question. Any nine jurors is sufficient." After several days of deliberation, the jury asked a question: "Please clarify the jury instructions for Question 21 (percentages) specifically related to whether nine out of twelve jurors must agree on the same set of percentages in order to have a group decision. We are confused about how to answer this question since Union Carbide has the burden of proof and none of the other companies are Defendants in this case."

[8] ☑ In response, the court told the jury "I believe that you're asking the court to clarify the jury instructions for the verdict form question number 21 as to whether 9 out of 12 jurors must agree on the same set of percentages in order to have a group decision. Well, your short answer is yes. **\*\*800** The group has to look at the evidence and the jury instructions and then whatever percentages you agree to, depending upon what, if anything, you decide to allocate, has to be totaling a hundred. And all 9 or more have to agree to that set of figures." The court then re-read the instruction under CACI No. 406, and instructed the jury that the fact that the other entities listed on the verdict form were not defendants made no difference. The court then asked all counsel whether anything else should be added, and each lawyer answered "no."

Union Carbide argues that the court thus instructed the jury that the same nine jurors had to agree to each percentage of fault. Acknowledging that this argument was not raised in the trial court, it also argues that under Code of Civil Procedure section 647, the instruction is "deemed excepted to."

We do not see that we can deem an exception, where there was in fact an agreement. ( *Perlin v. Fountain View Management, Inc.* (2008) 163 Cal.App.4th 657, 667, 77 Cal.Rptr.3d 743.) Moreover, we cannot agree that the court's answer to the jury's question was erroneous or in any way prejudicial. This jury was correctly instructed that "the same jurors do not have to agree on each verdict or each question. Any nine jurors is sufficient." The answer to the jury's question did not change that.

2. Substantial evidence

Union Carbide bases this argument on the evidence that Larry Stewart was exposed to asbestos containing-products supplied by other companies, though asbestos-containing roofing materials, pipe, gaskets, drywall, and insulation at work, and because he worked on his cars. Union Carbide then *33 cites some of plaintiffs' medical evidence, to the effect that all commercial asbestos fibers can cause mesothelioma, that the risk of mesothelioma is based on the cumulative effect of asbestos exposure, and that all of Larry Stewart's exposures caused his illness. Union Carbide concludes from this that fault should have been allocated to other entities, although it does not specify which entities or how much fault.

[9] ☑ In our analysis, we start with the presumption that the record contains evidence sufficient to support the judgment. It is the appellant's affirmative burden to demonstrate otherwise. ( *Foreman Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881, 92 Cal.Rptr. 162, 479 P.2d 362.) Union Carbide has not done so.

[10] ☑ Under established law, which Union Carbide does not challenge, it "undisputedly had the burden to establish concurrent or alternate causes by proving: that [Larry Stewart] was exposed to defective asbestos-containing products of other companies; that the defective designs of the other companies' products were legal causes of the plaintiffs' injuries; and the percentage of legal cause attributable to the other companies." ( *Sparks v. Owens–Illinois, Inc.* (1995) 32 Cal.App.4th 461, 478, 38 Cal.Rptr.2d 739.) As Union Carbide argues, the evidence was that Larry Stewart was exposed to other asbestos, and, as Union Carbide argues, plaintiffs said as much in closing argument. However, the jury could well have found that those exposures were not substantial factors in causing Larry Stewart's injury.

The statements in plaintiffs' closing argument that Union Carbide cites as judicial admissions in its favor demonstrate this. For instance, Union Carbide cites to the argument that (and here we put each statement in its context) "... yes, he was exposed to other people's asbestos as well. But there is no question he had a significant exposure for many, many months, days, and years to what was asbestos from Union Carbide. And they continue to dispute**801 that they have any responsibility whatsoever.... Every contribution to dose counts. Dr. Frank talked with you about that. And their claim is 'we have no role in that.' And that is just not true."

Counsel also argued "Yes, we do agree that he had other exposures. I told you that on the first day, I told you that in my opening and closing, and I will tell you that now. But I will tell you that it is not appropriate to put any numbers in there, because Union Carbide, who has the burden of proof, never gave you any evidence as how you should do it. They want you to speculate, ladies and gentlemen—maybe it's this, maybe it's that. It's their burden to produce evidence." Just so. The jury apparently found that Union Carbide did not carry its burden. It was entitled to so find.

*34 C. Punitive damages

1. Substantial evidence

[11] ☑ [12] ☑ [13] ☑ Punitive damages can be awarded only where the jury finds oppression, fraud, or malice by clear and convincing evidence. (Civ.Code, § 3294, subd. (a).) As Union Carbide argues, we review a challenge to the substantial evidence for punitive damages with that in mind, and "inquire whether the record contains 'substantial evidence to support a determination by clear and convincing evidence....' [Citation.]" ( *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 891, 93 Cal.Rptr.2d 364.) However, as with any challenge to the sufficiency of the evidence, it is the appellant's burden to set forth not just the facts in its favor, but all material evidence on the point. "Unless this is done the error is deemed to be waived." ( *Foreman*

*Clark Corp. v. Fallon, supra,* 3 Cal.3d at p. 881, 92 Cal.Rptr. 162, 479 P.2d 362.) Union Carbide has failed in this obligation. It cites the evidence in its favor, points out the ways in which (it contends) it controverted or impeached plaintiffs' evidence, and interprets the evidence in the light most favorable to itself. It concludes that the evidence shows that it had an "honest conviction" that use of Calidria asbestos was safe when appropriate precautions were taken.

The jury could perhaps have interpreted the evidence in the manner Union Carbide suggests, but the evidence also supports a different interpretation; that Union Carbide did not share its knowledge of the dangers of asbestos with its customers or with individuals who would, predictably, be exposed to dust from its products, and that it instead sought to downplay the risk.

Plaintiffs presented such evidence through the introduction of numerous memoranda, letters, and reports authored by and distributed to Union Carbide engineers, medical staff, and other executives (and in some instances sent to customers), and through the testimony of former Union Carbide employee J.L. Myers, who joined Union Carbide in 1966 as part of the asbestos research and development group, who was appointed to the position of marketing manager for asbestos products in 1970, and who in 1981 was promoted to product and production manager.

For instance, there was evidence that at some points, the warning Union Carbide gave its customers was weaker than the warnings given to employees at its mine and its mill. In 1964, Union Carbide prepared a toxicology report on the danger of asbestos and by 1968 had prepared a brochure specifically for the drywall industry. These were given to customers, but not to union halls, and Union Carbide made no effort to deliver the report, brochure, or other information to workers.

***35** In October 1971, well after Union Carbide had internally decided that " it would be prudent to assume that Calidria Asbestos***802** will behave like other asbestos," vis-à-vis mesothelioma and other health risks, it intimated in letters to customers that Calidria was or might be different than other asbestos in that respect.

The president of Hamilton Materials testified that after he and other Union Carbide customers became concerned about the dangers of asbestos, and contractors began asking questions, a drywallers' association sought information about those dangers from Union Carbide, and was told that "it was no big deal." On another occasion, when Hamilton asked Union Carbide about the dangers of asbestos, the Union Carbide representative said that "it was going to blow over. It was no big deal." As Union Carbide argues, there is no evidence on when this was said, but the testimony is nonetheless relevant to punitive damages.

In June of 1972, a Union Carbide manager, B.L. Ingalls, wrote a memo to other members of Union Carbide's marketing department, suggesting a "basic format for handling inquiries from customers concerning the new OSHA regulations." Far from suggesting a full and frank discussion of the danger of asbestos, Ingalls wrote that "Controlling the conversation is paramount." He suggested ways to "soothe" the customer, then wrote "If the customer is persistent and threatens to eliminate asbestos—a certain amount of aggressiveness may be effective. Words and catch phrases such as 'premature,' 'irrational' or 'avoiding the inevitable' will sometimes turn the table. [¶] The main objective is to keep the customer on the defensive, make him justify *his* position. Most customers who call are on the offensive, often prepared with 'loaded' questions and expecting an argument. Change the mood before discussing anything pertinent about the new regulations. Alternating between an aggressive and submissive attitude is confusing and allows you to bide your time. Refuse to argue, be humble and when they are sufficiently calm, sometimes even embarrassed, make your point forcefully. Don't cover too much ground in one confrontation. Even rabies shots are spaced at moderate intervals."

2. Evidentiary errors
Union Carbide contends that erroneous rulings on evidence compel reversal of the punitive damages award.

[14] ☑ First, Union Carbide contends that the court prejudicially erred by barring it from asking

Myers if he believed that it was safe for him and others to work at Union Carbide asbestos processing plant. The request was made at a sidebar during plaintiffs' questioning of Myers. The sidebar was occasioned *36 by a Union Carbide objection that plaintiffs were about to violate a ruling on a motion in limine excluding evidence about worker health at Union Carbide's King City asbestos facility, in particular, the death of an employee. During the sidebar, Union Carbide asked the court for guidance, saying "I want to tell you a question I would like to ask Mr. Myers.... Obviously, in terms of Mr. Myers' state of mind, the fact that he allowed himself to work around that asbestos, I think, is relevant to his state of mind, and I'm not going to ask him about his health." Union Carbide argued that the evidence was relevant to fraud and punitive damages, and plaintiffs raised, inter alia, an objection under Evidence Code section 352. The court said, "His state of mind is irrelevant," later noting that the fraud at issue involved concealment of the dangers of asbestos from Hamilton and others. The court also ruled that it would stand by its ruling on the motion in limine.

[15] ☑ We can see no abuse of discretion in the trial court ruling, and no prejudice. **803 ( City of Ripon v. Sweetin (2002) 100 Cal.App.4th 887, 900, 122 Cal.Rptr.2d 802; Shaw v. County of Santa Cruz (2008) 170 Cal.App.4th 229, 281, 88 Cal.Rptr.3d 186.) The state of mind of any particular Union Carbide employee, vis-à-vis his or her own risk, was not the issue. Any given employee might be particularly careful or careless, confident or worried, about his or her own health. Myers was a long term and senior Union Carbide employee, who still consulted for Union Carbide. If, as Union Carbide asserts, he testified that he worked around asbestos, the jury could easily have deduced that he did so voluntarily, with no ill effect or fear of ill effect. His testimony to that effect could have added little.

[16] ☑ We next turn to Exhibit 10604, which Union Carbide contends was erroneously and prejudicially introduced into evidence. This exhibit consisted of a three page letter from J.L. Myers of Union Carbide to a Thomas Anderson of Dow Chemical, and a one page Dow Chemical memo which was attached to the letter. The letter is dated April 29, 1975. In the most relevant part, it discusses the Dow Chemical memo. The Dow Chemical memo states, inter alia, that "Union Carbide claims that they have sufficient toxicological data that places Calidria in the nuisance dust category and distinctly separates it from emotional generalizations associated with generic asbestos." In the letter, Myers states that Dow Chemical has misconstrued a paper he had given earlier and that "Union Carbide has not made such a statement and in fact is in disagreement with it." The exhibit, in its entirety, was produced by Union Carbide in discovery and was admitted over Union Carbide's objection.

Myers was examined on this letter by plaintiffs, and in closing, plaintiffs' counsel argued that the exhibit showed that Union Carbide was able to mislead "a very smart group of engineers at Dow Chemical" about *37 dangers of Calidria asbestos. Counsel's argument also referenced the part of the exhibit which disavowed Dow Chemical's interpretation of Union Carbide's claims.

[17] ☑ Union Carbide argues that the jury thus heard hearsay evidence that Union Carbide had stated that its asbestos was "nuisance dust." As we see it, the jury had before it an admissible business record, found in Union Carbide's files, which indicated that Dow believed that Union Carbide had so stated, but that Union Carbide believed that Dow was wrong. The exhibit was thus a mixed blessing for plaintiffs. We see no abuse of discretion in its admission, in full, and no possibility of prejudice even if there had been error.

[18] ☑ Finally, Union Carbide complains that the court gave an erroneous limiting instruction on an exhibit, the 1972 OSHA standards on asbestos. In that instruction, the court told the jury that the document "it is being offered basically to show what information or what warnings may or may not have been given by Union Carbide to anyone else, for that purpose, for that limited purpose, but you mustn't follow whatever rules are in this document as the law that applies to this case ..." and that "information on government standards has only been allowed for the limited purpose of notice or as to what information was available to defendant Union Carbide Corporation and others. Compliance with government standards or regulations does not preclude the potential imposition of liability for a defective product or negligence."

Union Carbide argues that OSHA regulations were "the law," and that it could reasonably expect

those governed by the law, like drywall contractors, to follow the **804 regulation, thus showing that it did not act with knowing disregard for worker safety.

First, while it is true that in some senses OSHA regulations are law, the court's instruction was correct. It told the jury that the regulations did not govern this case, in which the issues concerned defect and warning, not compliance with any given regulation. Further, Union Carbide was permitted to make the argument which it now claims was barred. It argued that "as the judge just told you ... the OSHA regulations can be considered here as the knowledge available on the hazards and safe use of asbestos. And what you can consider the regulations for are on the issues of what the ordinary consumer of Union Carbide Calidria could expect about the hazards of asbestos and how to safely work with it and around it and what our customers to whom we gave those regulations knew or should have known as a result of having them. And it also goes to the issue of whether Union Carbide failed to provide adequate warnings to its customers where we were actually giving them these regulations that talked about the hazards and how it can be safely used."

*38 3. Federal due process standards

Union Carbide argues that the punitive damages award violates its federal due process rights. It makes arguments under two of the three "guideposts for courts reviewing punitive damages;" the degree of reprehensibility of the defendant's misconduct and the relationship between the harm suffered by the plaintiff and the award. ( *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 712–713, 101 Cal.Rptr.3d 773, 219 P.3d 749.)

[19]  Union Carbide first argues that the punitive damages award here was too high, given that its conduct was at the low end of the reprehensibility scale, where, it argues, punitive damages cannot exceed compensatory damages. In factual support, it references its argument on the sufficiency of the evidence for punitive damages. That is, it argues that it did nothing wrong. Though the United States Supreme Court has "suggested that a ratio of one to one might be the federal constitutional maximum in a case involving ... relatively low reprehensibility and a substantial award of noneconomic damages" ( *Roby v. McKesson Corp., supra,* 47 Cal.4th at p. 718, 101 Cal.Rptr.3d 773, 219 P.3d 749), this is not such a case.

Union Carbide's argument is simply insufficient. Plaintiffs' case was that Union Carbide profited from the sale of a dangerous substance, that it knew the dangers of its product, that it failed to warn consumers of those dangers, and Larry Stewart developed a fatal cancer as a result. Union Carbide's mere assertion to the contrary cannot change the result.

Nor do we agree with Union Carbide that the award was too high when measured against the compensatory damages. Here, Union Carbide argues that the award does not bear a reasonable relation to its actual contribution to plaintiffs' injuries. As to "actual contribution," it asks us to look not at the 85 percent contribution which the jury found, but to the pre-verdict settlements. It cites no authority for this proposition, and we know of none.

Union Carbide received credit for the pre-verdict settlements. It does not contend that the court erred in its methods of calculating those credits, but does contend that the fact that plaintiffs received other money means that its share of fault is actually less than 85 percent, and that the punitive award should not be compared to the compensatory award, but to a lesser number. We cannot see that the settlements reflect the fault of the other defendants, since settlement may be based on **805 many factors, in addition to or even aside from fault. The settlements reduced the amounts Union Carbide had to pay, but we cannot see that the fortuity of those settlements also governs the review of the punitive damages award.

*39 Disposition

The judgment is affirmed. Respondents to recover costs on appeal.

We concur: TURNER, P.J., and MOSK, J.

Cal.App. 2 Dist.,2010.
Stewart v. Union Carbide Corp.
190 Cal.App.4th 23, 117 Cal.Rptr.3d 791, 10 Cal. Daily Op. Serv. 14,363, 2010 Daily Journal D.A.R.
17,352


Briefs and Other Related Documents (Back to top)

• 2010 WL 1422951 (Appellate Brief) Respondents' Brief (Mar. 23, 2010) ▦ Original Image of this Document (PDF)
• 2009 WL 5211394 (Appellate Brief) Appellant's Opening Brief (Dec. 4, 2009) ▦ Original Image of this Document (PDF)
• B216193 (Docket) (May 14, 2009)

Judges, Attorneys and Experts (Back to top)

Judges | Attorneys | Experts

Judges

• **Armstrong, Hon. Orville A.**
State of California Court of Appeal, 2nd Appellate District, Division 5
Los Angeles, California 90013
Litigation History Report | Judicial Reversal Report | Judicial Expert Challenge Report | Profiler

• **Mosk, Hon. Richard Mitchell**
State of California Court of Appeal, 2nd Appellate District, Division 5
Los Angeles, California 90013
Litigation History Report | Judicial Reversal Report | Judicial Expert Challenge Report | Profiler

• **Rosenfield, Hon. Alan Sigmund**
State of California Superior Court, Los Angeles County
Los Angeles, California 90012
Litigation History Report | Judicial Reversal Report | Profiler

• **Turner, Hon. Paul Arthur**
State of California Court of Appeal, 2nd Appellate District, Division 5
Los Angeles, California 90013
Litigation History Report | Judicial Reversal Report | Judicial Expert Challenge Report | Profiler

Attorneys

Attorneys for Defendant
• **Axelrad, David M.**
Encino, California 91436
Litigation History Report | Profiler

• **Dubin, Morton Donald**
New York, New York 10019
Litigation History Report | Profiler

• **Gonzalez, Daniel J.**
Encino, California 91436
Litigation History Report | Profiler

• **Kennedy, John M.**
Los Angeles, California 90024
Litigation History Report | Profiler

- **Mayer, Kevin C.**
Los Angeles, California 90071
Litigation History Report | Profiler

- **Perez, Raul**
Los Angeles, California 90024
Litigation History Report | Profiler

- **Sungaila, Mary-Christine**
Encino, California 91436
Litigation History Report | Profiler

Attorneys for Plaintiff
- **Farrise, Simona A.**
Oakland, California 94607
Litigation History Report | Profiler

- **Hanley, Dean A.**
Berkeley, California 94710
Litigation History Report | Profiler

- **McMeekin, Kelly A.**
Berkeley, California 94710
Litigation History Report | Profiler

- **Vieira, Anthony E.**
Berkeley, California 94710
Litigation History Report | Profiler

---

Experts

- **Abraham, Reginald, M.D.**
PHYSICIAN AND SURGEON
Fountain Valley, CA
Expert Testimony | Profiler

- **Cohen, Richard D, MD**
MEDICAL DOCTOR
Tampa, FL
Profiler

- **Dikman, Steven H., M.D.**
PULMONOLOGIST
ND
Expert Challenge Report | Expert Testimony | Profiler

- **Frank, Arthur L, M.D.**
PROFESSOR OF OCCUPATIONAL HEALTH
Philadelphia, PA 19102
Expert Testimony | Resume | Profiler

- **Horn, Barry R., M.D.**
pulmonologist
Berkeley, CA
Expert Evaluator Report | Expert Challenge Report | Expert Testimony | Resume | Profiler

- **Hughson, William George, M.D.**

PULMONOLOGIST/INDUSTRIAL HYGIENIST
La Jolla, CA 92103
<u>Expert Evaluator Report</u> | <u>Expert Challenge Report</u> | <u>Expert Testimony</u> | <u>Resume</u> | <u>Profiler</u>

- **Marano, Donald E.**
Construction & Architecture, Environmental, Mold & Toxicology, Safety & Security, Environmental / Asbestos, Construction Safety,
Environmental Assessments, Hazardous Waste, Industrial Hygiene, Mold & Fungal Identification, OSHA/Workplace Safety,
Pollution, Sick Building Syndrome
Salt Lake City, UT 84106
<u>Expert Evaluator Report</u> | <u>Expert Testimony</u> | <u>Resume</u> | <u>Profiler</u>

END OF DOCUMENT

Adobe Reader is required to view PDF images.



(c) 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT  D

📄 West Reporter Image (PDF)

33 F.3d 1116, 40 Fed. R. Evid. Serv. 312, Prod.Liab.Rep. (CCH) P 13,995

Briefs and Other Related Documents
Judges, Attorneys and Experts
United States Court of Appeals,
Ninth Circuit.
Mariann HOPKINS, Plaintiff-Appellee,
v.
DOW CORNING CORPORATION, Defendant-Appellant.

No. 92-16132.
Argued and Submitted June 18, 1993.
Decided Aug. 26, 1994.

Silicone breast implant recipient filed products liability action against manufacturer. The United States District Court for the Northern District of California, Thelton E. Henderson, Chief Judge, entered judgment in favor of implant recipient. Manufacturer appealed. The Court of Appeals, Hug, Circuit Judge, held that: (1) implant recipient did not discover that her autoimmune disease could have been caused by implants until less than one year before filing suit, which rendered suit timely under discovery rule; (2) recipient's witnesses had sufficient knowledge, skill, and experience to qualify as experts; and (3) evidence supported amounts of compensatory and punitive damage awards.

Affirmed.


West Headnotes


[1] ☑ KeyCite Citing References for this Headnote

⇐241 Limitation of Actions
    ⇐241II Computation of Period of Limitation
        ⇐241II(F) Ignorance, Mistake, Trust, Fraud, and Concealment or Discovery of Cause of Action
            ⇐241k95 Ignorance of Cause of Action
                ⇐241k95(1) k. In general; what constitutes discovery. Most Cited Cases

Under discovery rule of California law, accrual date of cause of action is delayed until plaintiff is aware of her injury and its negligent cause.

[2] ☑ KeyCite Citing References for this Headnote

⇐241 Limitation of Actions
    ⇐241II Computation of Period of Limitation
        ⇐241II(F) Ignorance, Mistake, Trust, Fraud, and Concealment or Discovery of Cause of Action
            ⇐241k95 Ignorance of Cause of Action
                ⇐241k95(4) Injuries to the Person
                    ⇐241k95(5) k. Diseases; drugs. Most Cited Cases

Silicone breast implant recipient did not discover that mixed connective tissue disease (MCTD) could have been wrongfully caused by implants until less than one year before she filed suit against implant manufacturer and, thus, action was timely under California's discovery rule and one-year personal injury limitations period, even though it was filed more than one year after implants ruptured; recipient's doctors knew of no connection between silicone and MCTD, and manufacturer's

complaint analysis report following rupture did not indicate any wrongdoing by manufacturer. West's Ann.Cal.C.C.P. § 340(3).

[3] ☑ KeyCite Citing References for this Headnote

☞241 Limitation of Actions
  ☞241II Computation of Period of Limitation
    ☞241II(F) Ignorance, Mistake, Trust, Fraud, and Concealment or Discovery of Cause of Action
      ☞241k95 Ignorance of Cause of Action
        ☞241k95(4) Injuries to the Person
          ☞241k95(5) k. Diseases; drugs. Most Cited Cases

Silicone breast implant manufacturer failed to establish that implant recipient suspected, or should have suspected, at time implants ruptured that implants could have caused her autoimmune disease, for purposes of determining date of accrual of personal injury cause of action; recipient requested manufacturer's laboratory analysis of ruptured implants, but did nothing to reflect suspicion of wrongdoing by manufacturer, and articles and lawsuits against manufacturer were not numerous or notorious.

[4] ☑ KeyCite Citing References for this Headnote

☞157 Evidence
  ☞157XII Opinion Evidence
    ☞157XII(C) Competency of Experts
      ☞157k546 k. Determination of question of competency. Most Cited Cases

District court is not required to hold formal hearing on expert's qualifications to testify to scientific knowledge that will assist trier of fact, but rather must merely make determination on expert's qualifications. Fed.Rules Evid.Rules 104(a), 702, 28 U.S.C.A.

[5] ☑ KeyCite Citing References for this Headnote

☞157 Evidence
  ☞157XII Opinion Evidence
    ☞157XII(C) Competency of Experts
      ☞157k544 k. Cause and effect. Most Cited Cases

Witnesses had sufficient knowledge, skill, and experience to qualify as experts on causal connection between ruptured silicone breast implants and mixed connective tissue disease (MCTD); witnesses were medical doctors and toxicologist who had served government and private organizations on safety of substances and materials for use by humans. Fed.Rules Evid.Rule 104(a), 28 U.S.C.A.

[6] ☑ KeyCite Citing References for this Headnote

☞157 Evidence
  ☞157XII Opinion Evidence
    ☞157XII(D) Examination of Experts
      ☞157k555 Basis of Opinion
        ☞157k555.4 Sources of Data
          ☞157k555.4(1) k. In general. Most Cited Cases

Testimony of experts need not be based on generally accepted scientific principles, but rather must be based on scientific knowledge that will assist trier of fact. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

[7] ☑ KeyCite Citing References for this Headnote

⇐157 Evidence
　⇐157XII Opinion Evidence
　　⇐157XII(D) Examination of Experts
　　　⇐157k555 Basis of Opinion
　　　　⇐157k555.10 k. Medical testimony. Most Cited Cases

   Experts' opinion testimony on link between silicone breast implants and implant recipient's mixed connective tissue disease (MCTD) was sufficiently based on types of scientific data and techniques relied upon by medical experts to determine toxic causation in absence of solid body of epidemiological data; opinions were based on toxicology experience, review of medical records and studies concluded by implant manufacturer, general scientific knowledge of effects of silicone, epidemiological study of women, examination of implant recipient, and medical literature. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

[8] ☑ KeyCite Citing References for this Headnote

⇐313A Products Liability
　⇐313AIII Particular Products
　　⇐313Ak223 Health Care and Medical Products
　　　⇐313Ak227 k. Implants and prosthetic devices. Most Cited Cases
　　　　(Formerly 313Ak46.1, 313Ak46)

   Exemption from strict liability for prescription drugs under California law required drugs to be properly prepared and accompanied by sufficient warning and, thus, exemption could not apply to silicone breast implants which jury found were defectively designed and manufactured, and not accompanied by warning of known or knowable risk of harm of type suffered by recipient. Restatement (Second) of Torts § 402A comment.

[9] ☑ KeyCite Citing References for this Headnote

⇐115 Damages
　⇐115VII Amount Awarded
　　⇐115VII(B) Injuries to the Person
　　　⇐115k127.11 k. Internal injuries in general. Most Cited Cases
　　　　(Formerly 115k130, 115k132(1))

⇐115 Damages ☑ KeyCite Citing References for this Headnote
　⇐115VII Amount Awarded
　　⇐115VII(B) Injuries to the Person
　　　⇐115k127.12 Head and Neck Injuries in General; Mental Impairment
　　　　⇐115k127.15 k. Brain injuries in general; mental impairment. Most Cited Cases
　　　　　(Formerly 115k132(1), 115k130)

⇐115 Damages ☑ KeyCite Citing References for this Headnote
　⇐115VII Amount Awarded
　　⇐115VII(B) Injuries to the Person
　　　⇐115k127.57 Impairment of Earning Capacity
　　　　⇐115k127.59 k. Internal injuries in general. Most Cited Cases
　　　　　(Formerly 115k135, 115k134(1))

⇐115 Damages ☑ KeyCite Citing References for this Headnote

☞115VII Amount Awarded
   ☞115VII(E) Mental Suffering and Emotional Distress
      ☞115k140.7 k. Particular cases. <u>Most Cited Cases</u>
        (Formerly 115k140.5)

Evidence supported award of $840,000 in compensatory damages against silicone breast implant manufacturer, and in favor of implant recipient who developed mixed connective tissue disease (MCTD), based on recipient's lost earnings, past and future medical bills, severe shock to her mental system, and mental pain.

[10] ☑ <u>KeyCite Citing References for this Headnote</u>

☞<u>115</u> Damages
   ☞<u>115V</u> Exemplary Damages
      ☞<u>115k94</u> Measure and Amount of Exemplary Damages
        ☞<u>115k94.10</u> Amount Awarded in Particular Cases
          ☞<u>115k94.10(2)</u> k. Products liability. <u>Most Cited Cases</u>
           (Formerly 115k94)

Evidence supported award of $6.5 million in punitive damages against silicone breast implant manufacturer, and in favor of implant recipient who developed mixed connective tissue disease (MCTD); manufacturer was aware of possible defects in implants, knew long-term safety studies were needed, concealed information and negative test results, continued to manufacture implants and market them as safe despite contrary knowledge, and made considerable amounts of money from sale of implants.

**\*1118** <u>Shirley M. Hufstedler,</u> Hufstedler, Kaus & Ettinger, Los Angeles, CA, for defendant-appellant.

<u>Laurence H. Tribe</u>, Law Professor, Cambridge, MA, <u>Dan C. Bolton</u>, Wilson, Shryack & Bolton, San Francisco, CA, for plaintiff-appellee.

Appeal from the United States District Court for the Northern District of California.
Before: LAY,<u>FN\*</u> <u>HUG</u>, and <u>SCHROEDER</u>, Circuit Judges.

    <u>FN\*</u> Honorable <u>Donald P. Lay</u>, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

<u>HUG</u>, Circuit Judge:
In this diversity action, Mariann Hopkins sued Dow Corning Corporation to recover for injuries suffered as a result of two sets of <u>breast implants</u> manufactured by Dow, which she received in <u>breast reconstruction</u> surgeries in 1977 and 1986. The jury found Dow liable for Hopkins' injuries and awarded Hopkins $840,000 in compensatory damages and $6.5 million in punitive damages. Dow appeals.

Dow contends that the district court erred in determining that Hopkins' claims were not barred by the applicable statute of limitations. Dow challenges the district court's determination that the evidence presented at trial was sufficient to support a finding of fraud and further challenges the court's decision to admit the plaintiff's expert testimony on the issue of causation. Finally, Dow challenges the amount of both the compensatory and the punitive damages awards.

The district court's jurisdiction was based upon <u>28 U.S.C. § 1332(a)(1)</u>. We exercise jurisdiction over this timely appeal pursuant to <u>28 U.S.C. § 1291</u>. We affirm.

I. <i>FACTS</i>
On October 4, 1976, plaintiff Mariann Hopkins underwent a <u>bilateral subcutaneous mastectomy</u> for severe <u>fibrocystic disease</u> at St. Mary's Hospital in San Francisco, California. Dr. Karl Bollinger

performed the surgery. During the operation, Dr. Bollinger performed reconstructive surgery on plaintiff's breasts utilizing silicone gel implants manufactured by defendant Dow Corning.

Due to subsequent complications, Dr. Bollinger removed the left implant in November, 1976. In June, 1977, Dr. Bollinger inserted a replacement implant in the left breast and replaced the right breast implant in order to achieve symmetry. These implants were also manufactured by the defendant.

In March, 1979, Dr. Stephen Gospe diagnosed plaintiff with mixed connective tissue disease ("MCTD"). MCTD is a rheumatoligical disorder which includes symptoms such as extreme fatigue, weakness, muscle aches and pains, arthralgia, myalgia and arthritis. There is no known cure for this disease.

In January, 1986, plaintiff contacted Dr. Bollinger about further complications from her breast implants. Plaintiff underwent surgery in February to correct the problem. At that time, Dr. Bollinger discovered the implants had ruptured; during the four-hour *1119 operation, he proceeded to remove silicone gel that had escaped from the implant. The ruptured implants were sent to Dow for analysis. Several months later, Dow responded to Dr. Bollinger that "examination and testing of both envelopes found no evidence to indicate that any of the damage was manufacture related." Dr. Bollinger informed plaintiff of these results.

None of plaintiff's physicians informed her that the ruptured implant could be responsible for the connective tissue disease from which she suffered. In December, 1987, plaintiff learned from her mother that a possible connection between the ruptured implants and the immune disorder might exist. Shortly thereafter, plaintiff inquired of her physician, Dr. Pelfini, if a possible causal link existed. Dr. Pelfini informed plaintiff that he had never heard of such a connection. In January, 1988, plaintiff visited another of her treating physicians, Dr. Gospe, and inquired the same of him. Dr. Gospe was also unable to provide information regarding a possible causal connection. Plaintiff filed her complaint on December 1, 1988, alleging fraud, strict products liability and breach of express and implied warranties, and requesting compensatory and punitive damages.

The case was bifurcated so that issues regarding liability would be determined first, and if needed, a second trial on damages would be held. The liability phase of the trial began on October 29, 1991. The evidence presented at trial indicated that Dow rushed development of the silicone gel implants, failed to adequately test the implants, and ignored knowledge of adverse health consequences associated with the implants. Plaintiff presented evidence that Dow created a Mammary Task Force charged with getting the new gel implant to market in less than five months. Even after a task force member presented his concerns about "a possible gel bleed situation" Dow ignored proposed design modifications that would reduce the likelihood of leakage. The record indicates that Dow instructed salesmen to wash the implants with "soap and water" in the nearest restroom, and to "dry with hand towels as the implants become oily after being handled and [bleed] on the velvet in the showcase."

The evidence further indicated that in addition to the evidence of silicone leakage, Dow implants experienced a high rate of rupture. Despite proposals by one task force member to implement a "multiple dip" method as a means of ensuring greater uniformity in the envelope, and thereby less likelihood of rupture, Dow adopted the single dip method because it was "easier" and "cheaper." After an incident in which two of the new gel implants "broke during augmentation surgery for the TV taped demonstrations," Thomas Talcott, a Dow engineer, inquired of key Dow employees, "When will we learn at Dow Corning that making a product 'just good enough' almost always leads to products that are 'not quite good enough?' "

There was also evidence that no research concerning the long-term health effects had been conducted. The longest study to address possible adverse health effects of the implants took place over only 80 days and revealed evidence of inflammatory immune response caused by the gel. Dow continued to market these implants until 1987, without the benefit of a lifetime study to demonstrate the safety of its product.

Other evidence at trial indicated that Dow had knowledge of the harmful effects of silicone on the

human body. Dow obtained results of a study in which four dogs received silicone gel implants that resembled the implants that Dow was then marketing. The results demonstrated that after six months, the implants appeared to be functioning properly, but that after two years, inflammation surrounding the implants demonstrated the existence of an immune reaction. Dow did not publicly release the results of this research for several years, and when it did ultimately release the results, Dow omitted the negative findings and implied that the implants were safe.

Based on these facts, the jury returned a special verdict finding the defendant liable on all plaintiff's theories, including strict liability, breach of warranty, and fraud. The second trial, pertaining to the amount of damages, began on December 11, 1991. The jury awarded plaintiff $840,000 in compensatory **1120** damages and $6.5 million in punitive damages. The district court denied Dow's motion for a directed verdict. The district court also denied Dow's motions for judgment notwithstanding the verdicts and, alternatively, a new trial. Dow appealed.

## II. STATUTE OF LIMITATIONS

Dow contends that Hopkins' strict liability and breach of warranty claims are barred by California's one-year statute of limitations for personal injury claims. Hopkins asserts that her claims were timely because they were filed pursuant to the "delayed discovery" doctrine.

[1]  Hopkins and Dow agree that California Code of Civil Procedure § 340(3), which sets forth a one-year statute of limitations period for "an action ... for injury to ... one caused by the wrongful act or neglect of another," applies to the products liability and breach of warranty theories alleged in this case. The parties also agree that the common law rule, which provides that a cause of action accrues on the date of the injury, applies except as modified by the discovery rule. Under California's discovery rule, the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause. Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 245 Cal.Rptr. 658, 660-62, 751 P.2d 923, 926-27 (1988); Frederick v. Calbio Pharmaceuticals, 89 Cal.App.3d 49, 152 Cal.Rptr. 292, 294 (Ct.App.1979). The parties disagree as to when Hopkins became aware of her injury and its wrongful cause and, thus, whether Hopkins initiated this action in a timely manner.

On cross motions for summary judgment, the district court ruled that Hopkins' suit was timely filed.[FN1] We review de novo the district court's determinations on summary judgment. Jones v. Union Pac. R.R. Co., 968 F.2d 937, 940 (9th Cir.1992); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). We must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Federal Deposit Ins. Corp. v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992), cert. granted, 510 U.S. 989, 114 S.Ct. 543, 126 L.Ed.2d 445 (1993); Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).

> FN1. In its motion for summary judgment, Dow argued that all of Hopkins' claims, except those based upon fraud and negligent misrepresentation, were time-barred.

Under California's discovery rule, "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." Jolly, 245 Cal.Rptr. at 662, 751 P.2d at 927. Plaintiff need not know the specific facts necessary to establish her claim. Id. 245 Cal.Rptr. at 662, 751 P.2d at 928. Once plaintiff has " 'notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to [her] investigation, ... the statute commences to run' " Braxton-Secret v. A.H. Robins Co., 769 F.2d 528, 530 (9th Cir.1985) (citation omitted). To invoke the discovery rule, plaintiff must plead facts which show "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." Saliter v. Pierce Bros. Mortuaries, 81 Cal.App.3d 292, 146 Cal.Rptr. 271, 274 (Ct.App.1978) (citing G.D. Searle & Co. v. Superior Court, 49 Cal.App.3d 22, 122 Cal.Rptr. 218, 220 (Ct.App.1975)).

Hopkins pled the facts necessary to invoke the discovery rule. With respect to the time and

manner of her discovery that her injury may have been caused by wrongdoing, Hopkins alleged in her complaint that prior to December 1, 1987, plaintiff never had any reason to suspect that her silicone breast implants were the wrongful cause of her MCTD.

In ruling on the cross motions for summary judgment, the district court granted Hopkins' motion and denied Dow's. Dow appeals both orders. Obviously, if Hopkins' motion was properly granted, Dow's was properly denied. We therefore consider initially the order granting Hopkins' summary judgment.

**\*1121** A party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion, identifying those portions of its pleadings, depositions, answers to interrogatories, admissions on file or affidavits that demonstrate an absence of a genuine issue of material fact. _Celotex Corp. v. Catrett_, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Hopkins concedes that she would have the burden of proof at trial that her discovery of the wrongdoing was within one year from the time she filed her action. Thus, in order to prevail on the motion for summary judgment, she had to show that Dow failed to present evidence sufficient to create a genuine issue of fact as to whether the action was filed within one year of the discovery of the wrongdoing. _See Celotex_, 477 U.S. at 322, 106 S.Ct. at 2552. The standard for granting a summary judgment is equivalent to the standard for granting a judgment as a matter of law under Fed.R.Civ.P. 50. _Id._ at 323, 106 S.Ct. at 2552.

[2]  In her deposition, Hopkins testified that she learned of the possible connection between breast implants and autoimmune disease from her mother in December, 1987.[FN2] Thereafter, Hopkins asked Drs. Pelfini and Gospe about the possible connection. Like Dr. Bollinger's deposition testimony, the deposition testimony of Drs. Pelfini and Gospe shows that neither was aware of or informed her of the link between the implants and her disease. Hopkins also testified that she had never read any news report or other article in any newspaper or magazine about the possible link between breast implants and autoimmune disease. Hopkins filed her complaint on December 1, 1988, within one year of her alleged discovery in December, 1987.

> FN2. The record does not reflect the circumstances surrounding Hopkins' mother's knowledge of the possible connection between MCTD and the breast implants, nor does the record suggest that Hopkins' mother learned of the connection prior to December, 1987.

With respect to the circumstances excusing delayed discovery, Hopkins asserted that when she first learned that the implants had ruptured in February, 1986, she had no reason to suspect that the rupture had caused her injury or that any injury was the result of wrongdoing. Hopkins testified that her review of Dow's Complaint Analysis Report convinced her that the implants were "not defective in any way." The report made no mention of medical research indicating a link between silicone and MCTD. Moreover, the report stated, as to both implants, that (1) "[t]he envelope displayed no abnormality in the area of the rupture" and (2) "[t]he thickness [of the implant envelope] is within the product specification limits." The report concluded that "[e]xamination and testing of both envelopes found no evidence to indicate that any of the damage was manufacture related." In response to requested discovery, Dow admitted that the report "does not state that the implants were defective in design" and "does not state that breast implants may rupture without cause following implantation." We conclude that these facts demonstrate Hopkins' time of discovery, and further demonstrate circumstances excusing her delayed discovery.

We must next consider whether Dow set forth specific facts sufficient to demonstrate the existence of a genuine issue of material fact for trial regarding the discovery rule. In reviewing an order granting summary judgment, we are limited to the facts shown in the affidavits, depositions, interrogatories, admissions, uncontested pleadings, and other evidence available to the court at the time the motion was made. _Jewel Companies v. Pay Less Drug Stores Northwest_, 741 F.2d 1555,

1559 (9th Cir.1984).<u>FN3</u>

> FN3. An order granting summary judgment governs the future course of the trial, with the parties having considered the issue to be settled. This is to be distinguished from an order denying summary judgment, where the parties anticipate the production of further evidence on the issue of fact and may respond at trial. In that circumstance, the adequacy of the evidence to justify a jury's consideration of the issue is properly considered in the context of a motion for a judgment as a matter of law under Fed.R.Civ.P. 50. *See Stuckey v. Northern Propane Gas Co., 874 F.2d 1563, 1567 (11th Cir.1989).*

**\*1122** [3] ☑ Dow contends that the statute started running in 1986 when Dr. Bollinger discovered the ruptured implants during the February, 1986 surgery, and that Hopkins was responsible for investigating the possibility of wrongdoing at that time. The injury for which Hopkins seeks recovery is the MCTD, which she contends was caused by the defective implants. Dow maintains that Hopkins manifested suspicion of wrongdoing by asking for Dow's laboratory analysis of the returned implants and, therefore, that she was obligated to undertake an investigation into the possibility of wrongdoing. Dow submits that a simple investigation would have revealed to Hopkins the possible connection between the implants and MCTD.

We conclude that Dow failed to set forth specific facts indicating that when Hopkins first learned that the implants had ruptured in February, 1986, Hopkins actually suspected that she had been injured and that her injury was caused by wrongdoing. Dow did not point to any medical or testimonial evidence demonstrating that Hopkins was actually suspicious. Unlike the plaintiff in *Jolly,* Hopkins never stated that "she was interested in 'obtaining more information' about [the implants] because she wanted to 'make a claim;' she felt that someone had done something wrong to her concerning [the implants], that [they were] defective [prostheses] and that she should be compensated." *Jolly, 245 Cal.Rptr. at 663, 751 P.2d at 929.* Hopkins' statements were simple inquiries and not reflective of any suspicion of wrongdoing by Dow.

The statements Hopkins made are contrary to those made in *Jolly* and are readily distinguishable from those made by the plaintiffs in the cases on which Dow relies. *See Miller v. Lakeside Village Condo. Assn., 1 Cal.App. 4th 1611, 2 Cal.Rptr.2d 796, 803 (Ct.App.1991)* (on summary judgment, plaintiff expressly agreed that it was undisputed that the letter, which her husband sent to defendant almost two years before she filed her complaint, stated that the flooding caused mold which caused her injuries); *Gutierrez v. Mofid, 39 Cal.3d 892, 218 Cal.Rptr. 313, 315-17, 705 P.2d 886, 888-89 (1985)* (the evidence on summary judgment made clear, and plaintiff conceded for purposes of argument, that she both knew of her injury and suspected malpractice almost immediately after the operation-almost two years before she filed suit); *Snow v. A.H. Robins Co., Inc., 165 Cal.App.3d 120, 211 Cal.Rptr. 271, 275 (Ct.App.1985)* (plaintiff's deposition testimony demonstrated that eight years prior to filing her complaint, she viewed the Dalkon Shield as responsible for her ultimate injuries); *Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 884 (9th Cir.1983)* (plaintiff testified at her deposition that she understood immediately after the <u>hysterectomy</u>, more than six years before she filed suit, that the Dalkon Shield had not done what it was supposed to do and that it had caused the infection). There has been no evidence presented that Hopkins ever made statements of this nature. In the absence of specific factual evidence, there can be no triable issue of fact as to whether Hopkins actually knew that she had been injured and that her injury was caused by wrongdoing.

Furthermore, we also conclude that Dow failed to present specific facts to create a genuine issue of material fact as to whether Hopkins should have suspected that she had been injured and that her injury was caused by wrongdoing in February, 1986. Unlike the Dalkon Shield cases cited by Dow, this is not a case in which the only reasonable conclusion that Hopkins could have drawn was that the failure of the medical device to serve its purpose was the possible cause of her injury. *See Braxton-Secret, 769 F.2d at 531* ("When she discovered, after suffering a miscarriage, that she had been pregnant while the IUD was still in place, the only reasonable conclusion she could have drawn was that the IUD failed its contraceptive purpose" and caused her pregnancy and <u>incomplete spontaneous</u>

abortion); _Snow,_ 211 Cal.Rptr. at 276 ("An abortion is an event sufficient to alert a victim of unwanted pregnancy while using an IUD 'to the necessity for investigation and pursuit of her remedies.' ") (citation omitted).

Hopkins' case is drastically different from the Dalkon Shield cases discussed above. It is widely known that an intrauterine device, like any contraceptive, is designed to prevent **\*1123** pregnancy. Further, it is commonly understood that there is a direct connection between contraceptives and pregnancy. In contrast, the purpose of breast implants is not to prevent autoimmune disease, and it is not commonly understood that there is any connection, let alone a direct connection, between breast implants and MCTD. The Dalkon Shield cases are simply inapposite.

Dow contends that if Hopkins had undertaken a simple investigation, she would have discovered the possible link between breast implants and MCTD. We reject this contention. Hopkins' review of Dow's Complaint Analysis Report certainly did not reveal to her the possible connection; the report made no mention of medical research indicating a link between silicone and autoimmune diseases. Further, Hopkins, a lay person, was unlikely to discover the single article from a professional medical journal [FN4] and two cases like Hopkins' case against Dow, which Dow identified in its moving papers. Unlike _Jolly,_ this is not a case in which "a timely investigation would have disclosed numerous articles concerning [the possible link between breast implants and autoimmune disease] [in lay publications] and many [breast implants] suits filed throughout the country alleging wrongdoing." _Jolly,_ 245 Cal.Rptr. at 663, 751 P.2d at 929. As the district court accurately noted, the article and lawsuits cited by Dow were neither numerous nor notorious enough to put Hopkins on notice about her injury.

FN4. Dow identified an article entitled, "Human Adjuvant Disease, Possible Autoimmune Disease After Silicone Implantation: A Review of the Literature." The article appeared in the July, 1986 edition of _Plastic and Reconstructive Surgery,_ a periodical published by the American Society of Plastic and Reconstructive Surgeons.

Any information that a "simple investigation" arguably would have revealed to Hopkins should have come from Dow itself. In responses to requests for admissions, Dow stated that there were "reports in the published medical literature of suspected immunological sensitization or hyperimmune system response to silicone mammary implants" as of May, 1986. However, Dow neglected to mention this association in its Complaint Analysis Report so that Hopkins could take appropriate action. Instead, Dow elected to suppress this information. A simple investigation would not have revealed the existence of this information, and none of Hopkins' physicians answered her questions with any information suggesting that such a link existed. We agree with the district court that "the Complaint Analysis Report issued by Dow encouraged, if not created, plaintiff's belief that defendant's product was not defective and that she was not injured" such that "[r]uling in defendant's favor here would therefore unjustly reward defendant for misleading consumers such as Ms. Hopkins." We conclude that any effort by Hopkins to determine whether there was wrongdoing or whether there existed a possible link between breast implants and autoimmune disease were hampered by Dow, and that Hopkins' eventual discovery was made in spite of Dow.

The uncontradicted facts presented in support of the motions for summary judgment demonstrate that prior to December, 1987, Hopkins neither suspected nor should have suspected that she had been injured or that any injury was caused by wrongdoing. Accordingly, we conclude that the applicable statute of limitations was tolled until Hopkins' discovery in December, 1987, and the district court's order granting summary judgment in favor of Hopkins on this question was proper.

### III. _ADMISSIBILITY OF EXPERT WITNESS TESTIMONY_

Dow argues that the district court erred in denying Dow's motion in limine attacking the admissibility of the testimony of Hopkins' three expert witnesses. Dow maintains that the testimony on the issue of causation should have been excluded because it was not based on scientifically accepted standards. Further, Dow asserts that without the expert testimony, Hopkins would have been unable to satisfy her burden of proving that the implants caused her injuries. We review a district court's evidentiary rulings for abuse of discretion. _Roberts v. College of the Desert,_ 870 F.2d

1411, 1418 (9th Cir.1988).

**\*1124** [4] ☑ When confronted with an offer of expert testimony, the trial judge must first determine, pursuant to Rule 104(a) and Rule 702, whether the expert is proposing to testify to scientific knowledge that will assist the trier of fact in resolving a fact in issue.<u>FN5</u> Dow asserts that the district court erred in not holding a formal hearing. We disagree. The district court is not required to hold a Rule 104(a) hearing, but rather must merely make a determination as to the proposed expert's qualifications.

> FN5. Federal Rule of Evidence 104(a) provides:
>     (a) Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination, it is not bound by the rules of evidence except those with respect to privileges.
> Federal Rule of Evidence 702 provides:
>
>
>     If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

[5] ☑ Dow objects to the admission of testimony from Hopkins' three expert witnesses: Drs. Lappe, Kossovsky and Vasey. Dow asserts that Dr. Lappe was not qualified to testify as an expert because he was not qualified to recount a causal connection between Hopkins' implants and the disease from which she suffered. Hopkins contends that although Lappe is not a medical doctor, he is a nationally-renowned toxicologist who has served federal and state agencies as well as private organizations in determining the safety of substances and materials for use by human beings. With respect to Drs. Kossovsky and Vasey, Dow asserts that although they were medical doctors qualified to diagnose the cause of illness, neither was qualified to testify to Hopkins' condition because neither had examined her. We conclude that the knowledge, skill, and experience of Hopkins' three experts was sufficient to qualify them as experts within the meaning of Rule 104(a). The district court's decisions were proper.

Dow further challenges the admissibility of Hopkins' experts' testimony on the basis that the experts' methodology was not based on generally accepted scientific principles. The admission of such expert testimony is controlled by *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, ---- & n. 11, 113 S.Ct. 2786, 2796 & n. 11, 125 L.Ed.2d 469 (1993). In *Daubert,* the Supreme Court held that the *Frye* "general acceptance" test was superceded by the adoption of the Federal Rules of Evidence. 509 U.S. at ----, 113 S.Ct. at 2793. Focusing on the history of Rule 702, the Court stated, "[t]he drafting history makes no mention of *Frye,* and a rigid 'general acceptance' requirement would be at odds with the 'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to 'opinion' testimony.' " *Id.* 509 U.S. at ----, 113 S.Ct. at 2794 (citing *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 169, 109 S.Ct. 439, 449, 102 L.Ed.2d 445 (1988)). In formulating an approach to Rule 702, the Court noted that the trial judge must ensure that any scientific testimony or evidence ultimately admitted is "not only relevant, but reliable." *Id.* 509 U.S. at ----, 113 S.Ct. at 2795. The Court stated that the expert's testimony must be based on "scientific ... knowledge," implying a "grounding in the methods and procedures of science" and must connote "more than subjective belief or unsupported speculation." *Id.* The inquiry is to be a flexible one, and "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* 509 U.S. at ----, 113 S.Ct. at 2797.

[6] ☑ [7] ☑ Thus, according to *Daubert* and Rule 702, the testimony of these experts need not be based on "generally accepted" methodologies, but rather must be based on "scientific knowledge"

that will "assist the trier of fact." _Id._ 509 U.S. at ----, ----, 113 S.Ct. at 2794-95; Fed.R.Evid. 702. The record reflects that Hopkins' experts based their opinions on the types of scientific data and utilized the types of scientific techniques relied upon by medical experts in making determinations regarding toxic causation where there is no solid body of epidemiological data to review. The record demonstrates *1125 that Dr. Lappe is a recognized expert on the immunological effects of silicone in the human body. Specifically, Dr. Lappe testified that his opinion was based on his experience as a toxicologist, his review of medical records and Dow studies, and his general scientific knowledge of silicone's ability to cause immune disorders as established by animal studies and biophysical data.

Another of Hopkins' experts, Dr. Kossovsky, testified that the methodology used by Hopkins' experts in reaching their conclusions dated back to 1976. Specifically, he testified that his opinion was based on scientific studies he authored, his participation in a preliminary epidemiological study involving over 200 women, and his examination of Hopkins during which he discovered evidence of silicone in her tissue and detected symptoms consistent with exposure to silicone. He also testified to the presence of corroborating evidence found in studies conducted on animals.

Dr. Vasey, a rheumatologist, testified that his opinion was based on medical records, his clinical experience, preliminary results of an epidemiological study and medical literature. Thus, we conclude the "reasoning or methodology underlying the testimony is scientifically valid...." _Daubert,_ 509 U.S. at ----, 113 S.Ct. at 2796.

We conclude that Hopkins' experts' opinions were based on scientific techniques that satisfied the requirements established in _Daubert._ Accordingly, the district court's decision to admit the expert testimony was not an abuse of discretion.

## IV. _STRICT LIABILITY_

[8] ☑ Dow asserts that the district court erred in denying its motion in limine regarding the exemption from strict liability on the basis of comment k of the Restatement of Torts and the line of California cases which have followed its reasoning. Hopkins maintains that the exemption from strict liability provided by comment k has no applicability to the facts of this case. We agree with Hopkins that the claimed exception for manufacturers of prescription drugs is unavailable to Dow.

Comment k provides as follows:

k. _Unavoidably unsafe product._ There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs.... Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability....

In _Brown v. Superior Court,_ 44 Cal.3d 1049, 245 Cal.Rptr. 412, 751 P.2d 470 (1988), the California Supreme Court adopted this approach in exempting the manufacturers of prescription drugs from strict liability for injuries caused by their products. Earlier California cases which addressed the applicability of comment k to prescription drug cases have required that the drug at issue be found to be "unavoidably dangerous." The _Brown_ decision, however, disavowed this requirement and concluded that the comment k exception was intended to apply to all prescription drugs, not merely those which have been found to be "unavoidably dangerous." _Id._ 245 Cal.Rptr. at 423, 751 P.2d at 482. In reaching this conclusion, the _Brown_ court articulated numerous policy justifications for exempting such manufacturers from strict liability, particularly the importance of developing pharmaceutical products designed to alleviate pain and suffering. In light of these overriding public

policy concerns, the *Brown* court concluded that "a manufacturer is not **\*1126** strictly liable for injuries caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution." *Id.* 245 Cal.Rptr. at 424, 751 P.2d at 482-83.

Dow contends that under California law the exception for prescription drugs extends to the implants placed in Hopkins' body. It relies on a California Court of Appeal case that extends this exception to implanted medical devices. *Hufft v. Horowitz*, 4 Cal.App. 4th 8, 5 Cal.Rptr.2d 377 (Ct.App.1992). We need not consider whether this extension of the exception would be adopted by the California Supreme Court because we conclude the exception is inapplicable to the facts of this case.

In the present case, the jury returned special verdicts, finding (1) that the mammary implant was defectively designed, (2) that it was defectively manufactured, and (3) that Dow failed to warn of a known or knowable risk of harm of the type the plaintiff alleged occurred to her. These findings were adequately supported by substantial evidence. Because of these jury findings, it is clear that the requirements for the exemption to strict liability announced in *Brown* for prescription drugs were not met. There was a failure to establish that the product was properly prepared or that the appropriate warnings were given. Thus, even if this prescription drug exemption were extended to implanted medical devices, the exemption would be inapplicable because the essential conditions of the special exemption were not met.

Because there was adequate evidence to sustain the jury's finding of liability on the basis of strict liability, we need not consider the other theories of liability.

## V. *THE DAMAGE AWARD*

Hopkins was awarded $840,000 in compensatory damages and $6.5 million in punitive damages. Dow challenges the size of these awards. Dow contends that the compensatory damage award vastly exceeds actual damages sustained and further contends that the punitive damages award cannot be sustained because it is "grossly excessive," and no understandable relationship exists between actual damages and punitive damages. Hopkins asserts that the record contains ample evidence to support the amount of both the compensatory and the punitive damages awards.

### A. *Compensatory Damages*

[9] The record indicates that expert testimony presented at trial supported a finding that plaintiff had lost $404,083 in earnings as a result of her autoimmune disease. Her past medical bills were stipulated to be $37,318, and her future medical bills were computed to a present value of $31,600. Therefore, Hopkins' out-of-pocket losses amounted to $473,001. In addition, the jury apparently awarded Hopkins $366,999 in damages for "severe shock to the mental system" and mental pain. Other than a generalized allegation that Hopkins could not have suffered this degree of loss based on her claims, Dow offers no evidence to support its contention that the damages award was excessive. We conclude that the award of compensatory damages was proper.

### B. *Punitive Damages*

"In reviewing an award of punitive damages, the role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered. The court of appeals should then review the district court's determination under an abuse-of-discretion standard." *Browning-Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279, 109 S.Ct. 2909, 2922, 106 L.Ed.2d 219 (1989); *see also Bouman v. Block*, 940 F.2d 1211, 1234 (9th Cir.), *cert. denied*, 502 U.S. 1005, 112 S.Ct. 640, 116 L.Ed.2d 658 (1991) (trial court has discretion to award punitive damages); *Kennedy v. Los Angeles Police Dept.*, 901 F.2d 702, 707 n. 3 (9th Cir.1989) (jury has considerable discretion to award punitive damages, and its award, if supportable, will not be lightly disturbed).

**\*1127** The Supreme Court stated that the following considerations are relevant to a determination of whether a punitive damages award is excessive or inadequate:

(a) whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred; (b) the degree of reprehensibility of the defendant's conduct, the duration of that conduct, the defendant's awareness, any concealment, and the existence and frequency of similar past conduct; (c) the profitability to the defendant of the wrongful conduct and the desirability of removing that profit and of having the defendant also sustain a loss; (d) the "financial position" of the defendant; (e) all the costs of litigation; (f) the imposition of criminal sanctions on the defendant for its conduct, these to be taken in mitigation; and (g) the existence of other civil awards against the defendant for the same conduct, these also to be taken in mitigation.

*Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21-22, 111 S.Ct. 1032, 1045-1046, 113 L.Ed.2d 1 (1991). Application of these standards in *Haslip* imposed a sufficiently definite and meaningful constraint on the discretion of fact-finders in awarding punitive damages. *Id.*

   The Supreme Court recently provided additional guidance on the issue of excessiveness of punitive damage awards in *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) (plurality). In upholding a judgment of $19,000 in actual damages and $10 million in punitive damages, the Court opined that punitive damages awards are "the product of numerous, and sometimes intangible, factors; a jury imposing a punitive damages award must make a qualitative assessment based on a host of facts and circumstances unique to the particular case before it." *Id.* 509 U.S. at ----, 113 S.Ct. at 2720. The Supreme Court identified various principles that may be considered when reviewing a punitive damages award. For instance, a court is not limited to considering the proportionality of the punitive award to actual damages sustained, but may also consider the magnitude of the harm that potentially could have occurred and the potential gain to the defendant. The Court noted that punitive damages had been awarded by an impartial jury, as a result of collective deliberations based on arguments of adversaries and evidence, and then reviewed by the trial judge and upheld by the unanimous decision of the State Supreme Court of Appeals, "is entitled to a strong presumption of validity." *Id.* 509 U.S. at ---- - ----, 113 S.Ct. at 2719-20. Under these circumstances, the judgment of the Court declined to adopt a bright line test for evaluating the constitutionality of punitive damages awards and reiterated its position in *Haslip* that a "general concern[n] of reasonableness ... properly enter[s] into the constitutional calculus." *Id.* 509 U.S. at ----, 113 S.Ct. at 2720 (citing *Haslip*, 499 U.S. at 18, 111 S.Ct. at 1043). The Court indicated that while proportionality to actual damages sustained is relevant in the analysis, it is only one of several factors to be considered. *Id.* 509 U.S. at ----, 113 S.Ct. at 2722.

   [10] ☑ The evidence presented at trial established that a large number of Dow silicone gel breast implants had been implanted in thousands of women. Each of these women was at risk of encountering the same fate from which Hopkins suffered. Therefore, Dow's conduct in exposing thousands of women to a painful and debilitating disease, and the evidence that Dow gained financially from its conduct, may properly be considered in imposing an award of punitive damages. Moreover, given the facts that Dow was aware of possible defects in its implants, that Dow knew long-term studies of the implants' safety were needed, that Dow concealed this information as well as the negative results of the few short-term laboratory tests performed, and that Dow continued for several years to market its implants as safe despite this knowledge, a substantial punitive damages award is justified. Coupled with the facts that Dow is a wealthy corporation and that Dow made a considerable amount of money from the sale of its implants, the jury's award of $6.5 million is reasonable in light of *TXO* and *Haslip*. Therefore, we conclude that Hopkins presented sufficient *1128 evidence to uphold the jury's findings with respect to the punitive damages award.

VI. *CONCLUSION*

   We conclude that the district court properly granted Hopkins' motion for summary judgment on the statute of limitations question. We further conclude that the district court properly admitted expert testimony regarding the cause of plaintiff's injuries and the award of damages is therefore upheld.

**AFFIRMED.**

C.A.9 (Cal.),1994.
Hopkins v. Dow Corning Corp.
33 F.3d 1116, 40 Fed. R. Evid. Serv. 312, Prod.Liab.Rep. (CCH) P 13,995

Briefs and Other Related Documents (Back to top)

- 1993 WL 13013086 (Appellate Brief) Brief of Plaintiff-Appellee (Mar. 8, 1993)  Original Image of this Document (PDF)
- 1993 WL 13013088 (Appellate Brief) Appellant's Reply Brief (Mar. 4, 1993)  Original Image of this Document (PDF)
- 1993 WL 13013087 (Appellate Brief) Brief of Plaintiff-Appellee (Feb. 4, 1993)  Original Image of this Document (PDF)

Judges, Attorneys and Experts (Back to top)

Judges | Attorneys | Experts

Judges

- **Henderson, Hon. Thelton E.**
United States District Court, Northern California
San Francisco, California 94102
Litigation History Report | Judicial Motion Report | Judicial Reversal Report | Judicial Expert Challenge Report | Profiler

- **Hug, Hon. Procter Ralph Jr.**
United States Court of Appeals, Ninth Circuit
San Francisco, California 94103
Litigation History Report | Judicial Reversal Report | Judicial Expert Challenge Report | Profiler

- **Lay, Hon. Donald P.**
United States Court of Appeals, Eighth Circuit
St. Louis, Missouri 63102
Litigation History Report | Judicial Reversal Report | Profiler

- **Schroeder, Hon. Mary Murphy**
United States Court of Appeals, Ninth Circuit
San Francisco, California 94103
Litigation History Report | Judicial Reversal Report | Judicial Expert Challenge Report | Profiler

Attorneys

Attorneys for Defendant
- **Hufstedler, Shirley M.**
Los Angeles, California 90013
Litigation History Report | Profiler

Attorneys for Plaintiff
- **Bolton, Dan C.**
San Francisco, California 94104
Litigation History Report | Profiler

- **Tribe, Laurence H.**
Cambridge, Massachusetts
Litigation History Report | Profiler

Experts

● **Lappe, Marc Alan, PH.D.**
MEDICAL & HEALTH, MOLD & TOXICOLOGY / PHARMACOLOGY,TOXICOLOGY
CA 95445
Expert Evaluator Report | Expert Challenge Report | Expert Testimony | Resume | Profiler

END OF DOCUMENT

 West Reporter Image (PDF)

Adobe Reader is required to view PDF images.

(c) 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I declare that I am a citizen of the United States and a resident of Los Angeles, California or employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Tucker Ellis & West LLP, 515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071.

    On November 1, 2011, I served the foregoing document(s) entitled **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (DIVERSITY)** on the interested parties in this action by placing a copy thereof in a sealed envelope addressed as follows:

Peter & Kindra Robertson
12955 Autumn Leaves
Victorville, CA 92395

( )  **By Mail:** I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at Los Angeles, California. Document(s) were placed for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter is more than one day after date of deposit for mailing in affidavit.

( )  **By Personal Service via Facsimile:** (pursuant to Joint Trial Setting Order): I caused the above-referenced document(s) to be transmitted to the person(s) named above or on the attached service list at the facsimile numbers given thereat on this date before 5:00 p.m

( )  **By Personal Service**, I caused such envelope(s) to be delivered by hand to the individuals so indicated at the address listed.

( )  **By Overnight Courier Service:** I placed a copy in a separate envelope addressed to addressee(s) as indicated above or on the attached service list, and caused such envelope(s) to be delivered via **FEDERAL EXPRESS AIRBILL NO.**

(X)  (FEDERAL) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United State of America that the foregoing is true and correct.

Executed on November 1, 2011, at Los Angeles, California.

CYNTHIA M. HARRIS

012180.003506 739686.1

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John Kronstadt and the assigned discovery Magistrate Judge is Suzanne H. Segal.

The case number on all documents filed with the Court should read as follows:

## CV11- 9050 JAK (SSx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
PETER ROBERTSON AND KINDRA ROBERTSON

**DEFENDANTS**
JOHNSON & JOHNSON, MC-NEIL PPC, INC., and DOES 1
Through 50, inclusive.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing
yourself, provide same.)
Peter Robertson and Kindra Robertson, In Pro Per
12955 Autumn Leaves
Victorville, CA 92395

Attorneys (If Known)
Su-Lyn Combs (SBN: 209834)
Mollie Benedict (SBN: 187084)
TUCKER ELLIS & WEST LLP
515 South Flower Street
42nd Floor
Los Angeles, CA 90071-2223

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding ☒ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C Sections 1332, 1441 and 1446

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☒ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities – Employment | ☐ 640 R.R.& Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities – Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV11-09050

**FOR OFFICE USE ONLY:** Case Number:

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08) CIVIL COVER SHEET Page 1 of 2

PLEASE CONFORM

American LegalNet, Inc.
www.FormsWorkflow.com

**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | New Jersey |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernandino | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties

Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** Su-Lyn Combs     Date November 1, 2011

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com